MILKOVICH, APPELLANT, *v.* THE NEWS-HERALD ET AL., APPELLEES.

[Cite as Milkovich *v.* News-Herald (1984), 15 Ohio St. 3d 292.]

(No. 83-1833—Decided December 31, 1984.)

*Mr. Brent L. English,* for appellant.

*Wickens, Herzer & Panza Co., L.P.A., Mr. David L. Herzer, Mr. Richard D. Panza, Mr. Richard A. Naegele* and *Mr. John J. Hurley, Jr.,* for appellees.

*Per Curiam.* The matter presented for our review involves important First Amendment considerations which require us to weigh the important interests of an uninhibited press and the need for judicial redress of libelous utterances.

## I

The first issue before this court is whether appellant Milkovich is a "public figure" or "public official" as a matter of law.

The appellees argue that appellant is precluded from raising the issue that he is not a public figure, because he failed to preserve the issue during the initial appellate process of the cause.

In rejecting this argument we find that upon a careful review of the record, appellant has not waived this issue, and therefore, the issue is properly presented before this court.

In determining the status of appellant with respect to defamation law, a review of the pertinent United States Supreme Court decisions in this area is in order.

In the seminal case of *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254, the Supreme Court held that public officials could not recover for defamation absent proof by clear and convincing evidence that such defamation was undertaken with "actual malice." (Hereinafter referred to as "*N.Y. Times* standard.") Such a standard was similarly adopted by this court in *Dupler* v. *Mansfield Journal* (1980), 64 Ohio St. 2d 116 [18 O.O.3d 354].

Then, in *Rosenblatt* v. *Baer* (1966), 383 U.S. 75, the high court stated that the inquiry into whether one is a public official is necessarily a question of law for the trial judge to determine.

The Supreme Court extended the *N.Y. Times* standard to cover "public figures" in *Curtis Publishing Co.* v. *Butts* (1967), 388 U.S. 130. In that case, the court defined a public figure as one who commanded a substantial amount of public interest by his status alone, or one who had thrust himself by purposeful activity into the vortex of an important public controversy. The court reasoned that public figures should be held to the more difficult *N.Y. Times* standard because public figures have sufficient access to the means of counterargument in order to expose the falsity of the defamation complained of. *Id.* at 155.

The court further extended the *N.Y. Times* standard in *Rosenbloom* v. *Metromedia, Inc.* (1971), 403 U.S. 29, to private individuals where the matter reported was of concern to the public. *Rosenbloom* was a plurality opinion, and marked the most comprehensive application of the *N.Y. Times* standard. However, the rule of law set forth in *Rosenbloom* was unable to command a majority vote of the justices, and revealed the disagreement within the court that, perhaps, the application of the *N.Y. Times* standard was in need of further refinement.

We believe that if *Rosenbloom* and *Butts* were the last statements made by the high court concerning the definition of a public figure or official, we would be compelled to agree with the courts below that Milkovich is a public figure, and that the *N.Y. Times* standard would be applicable to his claim for relief. Needless to say, the *Rosenbloom* extension of the *N.Y. Times* standard to private individuals was reexamined in *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323, and the Supreme Court retreated from its prior holding. In *Gertz,* the high court acknowledged the necessity of maintaining the *N.Y. Times* standard with respect to public figures and officials in order to fortify First Amendment freedom and to prevent self-censorship by the media. However, the court stated that the need to avoid self-censorship by the media was not the only societal value at issue. *Id.* at 341. With respect to private individuals, the court held that a different standard must apply in order to protect the state's interest in compensating injury to the reputation of private persons. Therefore, the *Gertz* court redefined the meaning of a public figure in the following manner:

"For the most part those who attain this status [as a public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345.

The court in *Gertz* also noted that a person can become a public figure for a limited range of issues by being drawn or voluntarily injecting himself into a particular public controversy. In holding that Gertz was not a public figure for the purposes of defamation law, the court stated that although Gertz was well known in some circles, he had achieved no general fame or notoriety in the community, and had no persuasive involvement in the affairs of society. *Id.* at 351-352.

Two years later, the high court had before it the case of *Time, Inc.* v. *Firestone* (1976), 424 U.S. 448. In *Firestone,* the court reiterated its holding in *Gertz* with respect to the definition of a public figure, and held that the plaintiff, Mrs. Firestone, was not a public figure under *Gertz.* In spite of the fact that Mrs. Firestone was prominent among the "400" of Palm Beach Society, that she had subscribed to a press clipping service

which evidenced her frequent mention in the printed medium, and that she had held several press conferences during the course of her divorce proceedings (*id.* at 484-485 [dissenting opinion]), the court found that the *Gertz* definition of public figure status had not been satisfied. The court also stated that Mrs. Firestone's divorce proceeding was not the type of "public controversy" envisioned in *Gertz*. *Id.* at 454.

More recently, the Supreme Court sustained the *Gertz* characterization of a public figure in *Hutchinson* v. *Proxmire* (1979), 443 U.S. 111, 134; and *Wolston* v. *Reader's Digest Assn., Inc.* (1979), 443 U.S. 157, 164.

Turning our attention to the matter at hand, the appellees herein contend that in view of the accomplishments and honors earned by Milkovich in the area of high school wrestling,[1] the lower courts properly designated him as a public figure. Appellees submit, and the court of appeals agreed, that the *Butts* decision is quite similar to the case at bar in that both Butts and Milkovich attained pervasive notoriety in their respective communities as prominent sports personalities, and that, therefore, Milkovich must be held to be a public figure in the same manner as Butts.

We disagree, and find that such a determination by this court would require us to ignore the redefinition of the public figure status as enunciated in *Gertz* and its progeny. In applying the *Gertz* standard to the case

---

[1] The following comprises a list of achievements and distinctions which, appellees contend, relegate Milkovich to the status of a public figure:

"(a) National Coach of the Year Award, Portland, Oregon, 1977.

"(b) Received Congressional Record Citation.

"(c) National Council of High School Coaches Award.

"(d) Inducted into the National Helms Hall of Fame.

"(e) National Achievement Award for 100 victories without loss by 'Scholastic Wrestling News'.

"(f) Conducts wrestling clinics throughout the United States Sponsored by State Associations and Coaches Organizations.

"(g) Speaker at Coaches Associations throughout United States: South Carolina, Florida, New York, Indiana, all over the nation.

"(h) No other coach in United States ever close to his record.

"(i) Honored with citation from Ohio Senate.

"(j) Honored with citation from Ohio House of Representatives.

"(k) Charter member, Ohio Coaches Hall of Fame.

"(l) Received United States Wrestling Federation Award.

"(m) Honored and cited by Council of City of Cleveland.

"(n) Honored by City of Maple Heights: Mike Milkovich Day.

"(o) Past President, Ohio Coaches Association.

"(p) Conducts wrestling school at Baldwin-Wallace College.

"(q) Speaker at schools.

"(r) Teams have 265 wins against 25 losses.

"(s) Honored for winning four consecutive state titles.

"(t) Winner of ten (10) Ohio state team titles.

"(u) Placed team in top 3 of Ohio 22 out of 25 years.

"(v) Received Kent State University Hall of Fame Award.

"(w) Honored with gifts, proclamations, and awards on retirement." (Citations to record omitted.)

*sub judice,* we hold that Milkovich is not a public figure as that term is utilized in First Amendment analysis. While appellant may be an individual recognized and admired in his community for his coaching achievements, he does not occupy a position of persuasive power and influence by virtue of those achievements. By the same token, appellant's position in his community does not put him at the forefront of public controversies where he would attempt to exert influence over the resolution of those controversies. While appellant did become involved in a controversy surrounding the events during and subsequent to his team's wrestling match with Mentor High School, appellant never thrust himself to the forefront of that controversy in order to influence its decision. Furthermore, it cannot be said that appellant assumed the risks of public life through the advertisement of his wrestling clinics. If this were the case, then any widespread advertisement for purely business purposes could result in the classification of an individual as a public figure. Given the application of the public figure definition since *Gertz,* we find appellant's status to be akin to the status of the plaintiff in *Firestone, supra,* rather than the status of the athletic director in *Butts, supra.*

Likewise, we reject appellees' argument that appellant is also a "public official" by virtue of his employment as a public high school teacher and coach. The United States Supreme Court stated in *Rosenblatt, supra,* at 85:

"* * * It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

Our interpretation of *Rosenblatt* leads us to conclude that the facts of the instant case are insufficient to qualify appellant as a public official for the purposes of defamation law. While appellees place great reliance on the case of *Johnston v. Corinthian Television Corp.* (Okla. 1978), 583 P. 2d 1101, where a grade school wrestling coach was held to be a public official, we find that a similar interpretation by this court would unduly exaggerate the "public official" designation beyond its original intendment. In any event, we are unpersuaded that the *Rosenblatt* definition of a public official was intended to encompass a person like appellant under the facts and circumstances contained in the instant cause.

Therefore, we hold that for the purposes of defamation law and analysis as set forth in *N.Y. Times Co.* and *Gertz* and their progeny, the appellant herein is not a public figure or public official as a matter of law. On remand, the trial court is instructed to proceed under the rule of law pronounced in *Embers Supper Club, Inc.* v. *Scripps-Howard Broadcasting Co.* (1984), 9 Ohio St. 3d 22, rather than that rule of law set forth in *Dupler, supra.*

## II

Having found appellant to be a private individual in the realm of First Amendment analysis, our focus turns to the issue of whether the alleged defamatory article expresses constitutionally protected opinion; or whether it contains an assertion of fact which, if false, is not protected by the First Amendment. The courts below held that the article in question expressed the author's "heartfelt" opinion, thus rendering it non-actionable as a matter of law.

The United States Supreme Court stated in *Gertz, supra,* at 339-340:
"We begin with the common ground. Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact. * * *"

Many courts have interpreted this statement as requiring absolute constitutional protection for statements of opinion in the context of the laws of libel. See, *e.g., Orr* v. *Argus Press Co.* (C.A. 6, 1978), 586 F. 2d 1108. This court intimated in *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 372, albeit in the context of a labor dispute, that where language is used which is capable of different meanings, such language constitutes an expression of opinion, not fact, and is protected. Nevertheless, this court has not adopted any specific standard with which to guide courts in determining what constitutes an expression of opinion, and what constitutes an expression of fact.

Some courts have adopted a variation of a "truth or falsity" test in order to distinguish between assertions of fact and assertions of opinion. See, *e.g., Buckley* v. *Littell* (C.A. 2, 1976), 539 F. 2d 882, certiorari denied (1977), 429 U.S. 1062. Under this approach, the objectionable statements are evaluated to determine whether the statements are capable of being proven false empirically.

Other courts have analyzed the fact/opinion distinction by applying the standard of the "ordinary person"; *i.e.,* whether an ordinary reader of the alleged libelous statements would understand the statements as an expression of the author's opinion, or as statements of existing facts. See, *e.g., Mashburn* v. *Collin* (La. 1977), 355 So. 2d 879.[2]

While we decline to establish a *per se* rule in determining what constitutes a protected opinion or a potentially redressable assertion of fact, our review of the instant cause leads us to conclude that the lower courts erred in holding that the statements in issue were nothing more than the writer's "heartfelt" opinion. We find that the statements in issue are factual assertions as a matter of law, and are not constitutionally protected

---

[2] For a general exploration of the various tests courts have implemented in examining the fact/opinion dichotomy, see Note, The Fact-Opinion Distinction in First Amendment Libel Law: The Need for a Bright-Line Rule (1984), 72 Geo. L.J. 1817.

as the opinions of the writer. Nothing in the article effectively precautions the reader that the author's statements are merely his considered opinions. The plain import of the author's assertions is that Milkovich, *inter alia,* committed the crime of perjury in a court of law.

In reversing the appellate court on this issue, we are persuaded by the cogent rationale supplied by Judge Friendly in *Cianci* v. *New Times Publishing Co.* (C.A. 2, 1980), 639 F. 2d 54, at 64:

"It would be destructive of the law of libel if a writer could escape liability for accusations of crime simply by using, explicitly or implicitly, the words 'I think'."

Therefore, based upon the foregoing, we reverse the judgment of the court of appeals, and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, J., dissents.

LOCHER and HOLMES, JJ., dissent separately.

WILLIAM B. BROWN, J., dissenting. I respectfully dissent on the basis that the alleged defamatory article expresses a constitutionally protected opinion and accordingly cannot be the basis of a defamation action.

There is a growing judicial recognition that pure statements of opinion are absolutely privileged from being the basis for a defamation suit. See, *e.g., Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 324. In *Orr* v. *Argus Press Co.* (C.A. 6, 1978), 586 F. 2d 1108, 1114, the *Gertz* principle regarding a statement of opinion was applied: "It is now established as a matter of constitutional law that a statement of opinion about matters which are publicly known is not defamatory." The underlying rationale is that even erroneous opinion is to be tolerated in order that self-censorship not prevail over robust public debate.

In the instant case, appellant was essentially accused in the article of perjury, *i.e.,* lying under oath. The great weight of authority holds that allegations concerning illegality are not absolutely protected by the First Amendment.

"While the Restatement (Second) of Torts posits an absolute privilege for opinions, it explicitly recognizes that an allegation of criminal behavior is properly the subject of a defamation action. Most courts have not faced the question of whether such accusations should be categorized as facts or

opinions. They have acknowledged, nonetheless, either implicitly or explicitly, that such accusations are not absolutely protected under the first amendment and have only the more limited *New York Times* privilege reserved for statements not made in reckless disregard of the truth." Note, Fact and Opinion After *Gertz* v. *Robert Welch, Inc.*: The Evolution of a Privilege (1981), 34 Rutgers L. Rev. 81, 114-115.

In the instant case, the statements were not made in reckless disregard of the truth. The author disclosed the basis upon which his opinions were formulated. He stated he attended the wrestling match in question and was present at the OHSAA hearing. The writer also indicated he had a recounting of the due process proceedings held in Franklin County from Dr. Meyer, who had also been at the OHSAA hearing. Under these facts, I cannot find that the writer acted in reckless disregard of the truth. Resultantly, in my opinion, this editorial opinion may not form the basis of a defamation suit.

Having determined that the article constituted a constitutionally privileged opinion, it is unnecessary to consider the issue of whether appellant was a public figure.

HOLMES, J., dissenting. In the first instance, it appears to me that the publication with which we are concerned here is an expression of an opinion by the reporter, and not an untruthful statement of fact. As such, the statement is not actionable under First Amendment protection. *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323; *Hotchner* v. *Castillo-Puche* (C.A.2, 1977), 551 F. 2d 910; and *Orr* v. *Argus-Press Co.* (C.A.6, 1978), 586 F. 2d 1108.

An opinion can be libelous only if a defamed plaintiff establishes four very limited conditions: (1) the opinion article must imply the existence of facts unknown to the general reader; (2) these implied, unknown facts must not be disclosed in the article; (3) these implied, undisclosed facts must be false; and (4) these implied, undisclosed and false facts must be the basis for the opinions stated in the article. *Orr* v. *Argus-Press Co.*, *supra; Hotchner* v. *Castillo-Puche, supra.* The privilege for opinion can be lost only if the article does not disclose the facts underlying the opinions. 3 Restatement of the Law 2d, Torts (1977) 170, Section 566.

In the case before us, the trial court carefully reviewed the subject article and then held that the article fully disclosed the facts upon which its opinions were formulated. In affirming the trial court's decision, the court of appeals held that "[t]he record supports the trial court's analysis. Moreover, the article, as an opinion, disclosed its underlying facts. The writer * * * referred to events and circumstances upon which he based his opinion."

The article plainly refers to at least three distinct but related events

upon which the author's personal opinions and editorial conclusions were derived:

(1) The February 9, 1974 wrestling meet between Maple Heights High School and Mentor High School;

(2) the administrative hearings on the wrestling meet conducted by the Ohio High School Athletic Assocation; and

(3) the proceedings before, and the decision of, the Court of Common Pleas of Franklin County regarding the due process aspects of the OHSAA administrative hearings.

The author further states in the article that he attended, covered and reported upon the wrestling match in question and the administrative hearings before the OHSAA. The article also explains that the opinions expressed regarding appellant's testimony before the Court of Common Pleas of Franklin County were based upon the author's conversation with Dr. Harold Meyer, Commissioner of the OHSAA, who attended the court hearing. Thus, a reader was free to agree or disagree with Diadiun's expressed opinions based upon the facts clearly stated in the article.

Furthermore, it is my view that the lower courts must be affirmed under the facts presented here in that Milkovich could well be considered to be a public figure under the criteria set forth in the recent opinions of the United States Supreme Court. In *Curtis Publishing Co.* v. *Butts* (1967), 388 U.S. 130, the court held that a person's prominence in the sports world could make him a public figure based upon the facts presented in a given case. Similarly, the proof before the trier of the facts in this case established that Milkovich was a public figure within the area of the publication of appellee's newspaper column, and perhaps reasonably beyond such geographic area. By his own admission, Milkovich is one of America's outstanding coaches and a nationally acclaimed sports figure. His coaching record is unparalleled in Ohio and throughout the country, and he has been honored by civic groups, legislative bodies and numerous sports organizations.[3]

In accordance with the Supreme Court's requirements in *Butts, supra,* the trial court in the case *sub judice* properly ruled, in summary judgment proceedings, that Milkovich is a public figure. Appellant's attainments and prominence as a national sports figure, honored by sports, civic and legislative bodies, with coaching records seemingly unparalleled in Ohio and nationally, unquestionably establish him as a public figure.

In addition, Milkovich, by his own actions, has established himself as a "public figure" under the standards of *Gertz, supra.* In that case, the Supreme Court summarized the law regarding "public figure" status in libel cases by stating that, "[t]hose who, by reason of the notoriety of their

---

[3] A list of such accomplishments is found in fn. 1 of the majority opinion.

achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures * * *." *Id.* at 342.

Based on the foregoing, and construing all of the evidence most favorably in favor of Milkovich at the time of the motion for summary judgment, I conclude that the appellant failed to raise any genuine issue of material fact upon which a jury could find actual malice with any standard of convincing clarity, and therefore the trial court's granting of summary judgment was proper.

Accordingly, I would affirm the judgment of the court of appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.