MILKOVICH, APPELLANT, *v.* THE NEWS-HERALD ET AL., APPELLEES.

(No. 13-009 — Decided February 6, 1989.)

*Brent L. English,* for appellant.
*Wickens, Herzer & Panza Co., L.P.A.,* and *Richard D. Panza,* for appellees.

STILLMAN, J. On February 8, 1974, Maple Heights High School had a wrestling meet with Mentor High School. Michael Milkovich, Sr., now retired, was then the head wrestling coach of Maple Heights. During the meet, a controversial call was made against Maple Heights. As a result, a fight broke out involving spectators and team members from both squads resulting from the disqualification of a Maple Heights wrestler. Several people were injured in the disturbance.

On February 28, 1974, the Ohio High School Athletic Association ("OHSAA") held a hearing on the matter at which both H. Don Scott, then Superintendent of Maple Heights Public Schools, and Milkovich testified. Following the hearing, OHSAA placed the entire Maple Heights team on probation for one year and declared the team ineligible for the 1975 state tournament. OHSAA also censured Milkovich for his actions during the match.

Thereafter, several parents and affected wrestlers sued OHSAA in the Court of Common Pleas of Franklin County for a restraining order contending they were denied due process. Scott, Milkovich and Dr. Harold A. Meyer, the commissioner of OHSAA, all testified at this proceeding. The court reversed the probation and ineligibility orders on grounds of denial of due process.

The day after the trial court's decision, the News-Herald in Willoughby, Ohio, published a column written by reporter J. Theodore Diadiun on its sports page. The column was titled "Maple beat the law with the 'big lie,'" and included the words "TD Says" beneath the title. The carryover page was entitled "* * * Diadiun says Maple told a lie." The article alleged, *inter alia,* that Milkovich and Scott "* * * lied at the hearing after each having given his solemn oath to tell the truth." The record indicates that Diadiun did attend the wrestling match and OHSAA's hearing, but was not present at the Franklin County judicial proceedings. However, the article stated that Diadiun had discussed the hearing with Dr. Meyer.

Both Milkovich and Scott commenced a defamation action in the

Court of Common Pleas of Lake County against the News-Herald, its parent company, Lorain Journal Company, and Diadiun. Milkovich, in his original and amended complaints, alleged that the following passages of the Diadiun article were actionable and libelous:

"Maple beat the law with the 'big lie'

"* * *

"* * * a lesson was learned (or relearned) yesterday by the student body of Maple Heights High School, and by anyone who attended the Maple-Mentor wrestling meet of last Feb. 8.

"A lesson which, sadly, in view of the events of the past year, is well they learned early.

"It is simply this: If you get in a jam, lie your way out.

"If you're successful enough, and powerful enough, and can sound sincere enough, you stand an excellent chance of making the lie stand up, regardless of what really happened.

"The teachers responsible were mainly head Maple wrestling coach, Mike Milkovich, and former superintendent of schools H. Donald Scott.

"* * *

"Anyone who attended the meet, whether he be from Maple Heights, Mentor, or impartial observer, knows in his heart that Milkovich and Scott lied at the hearing after each having given his solemn oath to tell the truth.

"But they got away with it.

"Is that the kind of lesson we want our young people learning from their high school administrators and coaches?

"I think not."

Prior to trial, the trial court determined that the appellant was a public figure and, as such, would be required to prove "actual malice" on the part of the News-Herald et al. under *New York Times Co.* v. *Sullivan* (1964), 376 U.S. 254.

A jury trial was held, but a directed verdict was entered against Milkovich. Upon appeal, the court of appeals reversed and remanded. The Ohio Supreme Court overruled the News-Herald's motion to certify the record and the United States Supreme Court denied certiorari.

Upon remand, the News-Herald filed a motion for summary judgment contending that the alleged libel was protected because it amounted to an expression of opinion. The trial court agreed and granted summary judgment in favor of the News-Herald et al.

Upon a second appeal to the court of appeals, the trial court's decision was affirmed. On December 31, 1984, the Ohio Supreme Court overruled the appeals court. The Ohio Supreme Court held, *inter alia,* that the Diadiun article was not constitutionally protected material. The case was reversed and remanded. See *Milkovich* v. *News-Herald* (1984), 15 Ohio St. 3d 292, 15 OBR 424, 473 N.E. 2d 1191.

While the *Milkovich* case was pending, H. Don Scott had also filed a suit in libel. The trial court dismissed the *Scott* suit on summary judgment. The *Scott* trial court found that the article was constitutionally protected opinion, that Scott was a "public official," and that he had failed to prove "actual malice." The court of appeals affirmed the judgment of the *Scott* trial court. On August 6, 1986, the *Scott* suit was before the Ohio Supreme Court on a motion to certify. The *Scott* suit was in conflict with *Milkovich* v. *News-Herald* (1984), 15 Ohio St. 3d 292, 15 OBR 424, 473 N.E. 2d 1191. The Ohio Supreme Court affirmed the court of appeals. See *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 25 OBR 302, 496 N.E. 2d 699. It held, *inter alia,* that the article in question was opinion.

On remand for the third time to the Court of Common Pleas of Lake

County, the News-Herald et al. moved for summary judgment. Their motion claimed that the case of *Scott* v. *News-Herald* (1986), 25 Ohio St. 3d 243, 25 OBR 302, 496 N.E. 2d 699, established, for the purpose of this case, that the article in question was cloaked with an absolute constitutionally based First Amendment privilege. The News-Herald's motion for summary judgment had attached a memorandum filed January 20, 1987. The attached memorandum basically stated that the case of *Scott* v. *News-Herald, supra,* was now the law and should control in the instant cause. Nothing else was attached to the motion.

On January 30, 1987, a "supplemental memorandum in support of motion for summary judgment" was filed. Attached was an affidavit of Ted Diadiun which stated that a middle school in the Maple Heights School District had been named "Milkovich Middle School" after the wrestling coach. On April 8, 1987, a "motion of defendant for summary judgment, instanter" was filed. Nothing was attached; however, the motion stated that it incorporated "the interrogatories and depositions filed with the court and all of the affidavits and exhibits annexed to defendant's prior Motions for Summary Judgment filed with the Court on November 8, 1976 and April 17, 1981." On July 15, 1987, a memorandum in opposition to summary judgment was filed. There were no attachments. A reply memorandum, with no attachments, was filed August 10, 1987.

The trial court granted the summary judgment motion of the News-Herald et al. Milkovich has timely appealed the case to this court, listing four assignments of error:

"1. The trial court erred in granting a summary judgment since the appellees are not protected by a blanket First Amendment privilege as the offending article contained assertions of fact and not mere opinions.

"2. The law of the case doctrine operates to require the trial court to follow the mandate of the Supreme Court of Ohio in *Milkovich* v. *News-Herald* 15 Ohio St. 3d 292 (1984).

"3. Summary judgment was inappropriate in this case because the existence of privilege depended on resolution of disputed factual contentions and thus could not be made as a matter of law by the court based on a summary judgment motion.

"4. Assuming that appellees are not protected by a First Amendment-based privilege to defame, summary judgment should not have been granted because there are genuine issues of fact in dispute as to negligence and actual malice."

The assigned errors are without merit.

Milkovich contends that the trial court erred in granting summary judgment. He asserts four assignments of error, all of which relate to the trial court's granting of summary judgment. Milkovich's first contention is that the article in the News-Herald was not protected by the First Amendment because it contained assertions of fact and not opinion. His second contention is that the trial court should have followed the case of *Milkovich* v. *News-Herald, supra.* His third contention is that there remains a genuine issue as to whether the statements were assertions of fact or opinion. His final contention is that there continue to be genuine issues of fact in dispute as to whether there was actual malice on the part of the News-Herald et al.

Milkovich's four assignments of error are basically only one assignment of error, to wit: The trial court erred in granting appellee's motion for summary judgment.

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O.

3d 466, 472, 364 N.E. 2d 267, 274, the Ohio Supreme Court stated:

"Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

Civ. R. 56 establishes summary judgment as a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 24 O.O. 3d 1, 433 N.E. 2d 615. The burden of showing that no genuine issue exists as to any material fact falls upon the party requesting a summary judgment. When a motion for summary judgment is made and supported, an adverse party must counter with affidavits or other evidentiary material provided for in Civ. R. 56(C) to create a genuine issue as to any material fact. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. The inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion. *Williams* v. *First United Church of Christ* (1974), 37 Ohio St. 2d 150, 66 O.O. 2d 311, 309 N.E. 2d 924.

Milkovich's first three contentions can be consolidated into one. He asserts that there remains a factual dispute as to whether the article is an assertion of fact or opinion. Milkovich further contends that this court should follow the reasoning as set forth in *Milkovich* v. *News-Herald, supra.*

In the instant cause, it has been decided, as a matter of law, that the article in question is protected opinion:

"* * * In *Milkovich* v. *News-Herald, supra,* this court recently dealt with the same article we examine today. * * * [W]e now overrule the holding in *Milkovich* with respect to the characterization of the article. We find the article to be an opinion, protected by Section 11, Article I of the Ohio Constitution as a proper exercise of freedom of the press.

"The federal Constitution has been construed to protect published opinions ever since the United States Supreme Court's opinion in *Gertz* v. *Robert Welch, Inc.* (1974), 418 U.S. 323. * * *" *Scott* v. *News-Herald, supra,* at 244, 25 OBR at 303, 496 N.E. 2d at 701.

Milkovich asserts that the trial court was bound to follow the mandate of the Supreme Court as set forth in *Milkovich* v. *News-Herald, supra.* A trial court does not have the discretion to disregard a mandate of a superior court *unless* there is an extraordinary circumstance *"such as an intervening decision by the Supreme Court."* (Emphasis added.) *Nolan* v. *Nolan* (1984), 11 Ohio St. 3d 1, 11 OBR 1, 462 N.E. 2d 410. Second, when there is a conflict between cases, the court of appeals is bound by the Supreme Court's last decision on the question involved, regardless of its previous decision. *Mutual Life Ins. Co. of Baltimore* v. *Connell* (1931), 43 Ohio App. 415, 12 Ohio Law Abs. 203, 183 N.E. 286. See, generally, 23 Ohio Jurisprudence 3d (1980) 150, Courts and Judges, Section 514.

In conclusion, it has been decided, as a matter of law, that the article in question was constitutionally protected opinion. The court of appeals, as a lower court, is bound by the Supreme Court's decision on the matter. As such, there is no genuine issue as to a material fact remaining, nor is there

any factual dispute as to whether the article was opinion or assertion of fact. Accordingly, the first, second and third assignments of error are without merit.

In his fourth assignment of error, Milkovich contends that there is a "genuine issue of fact" in dispute as to negligence and actual malice. He asserts that the article and its assertions are not privileged and as such there remains a material issue of fact as to whether the News-Herald acted negligently or with "actual malice" in publishing the article.

In the instant cause, counsel's contention is erroneous. The article which has been previously considered in *Scott* v. *News-Herald, supra,* has already been found to be constitutionally protected opinion:

"Expressions of opinion are generally accorded absolute immunity from liability under the First Amendment. *Trump* v. *Chicago Tribune Co.* (D.N.Y. 1985), 616 F. Supp. 1434, 1435; *Gertz* v. *Robert Welch, Inc.* [(1974), 418 U.S. 323], *supra,* at 339; *Chaves* v. *Johnson* (Va. 1985), 335 S.E. 2d 97, 102. * * *" *Id.* at 250, 25 OBR at 307-308, 496 N.E. 2d at 705.

As a matter of law, the instant cause does not present any material issue of fact as to negligence or "actual malice." Diadiun's article is opinion and, as such, the News-Herald and Diadiun are accorded absolute immunity from liability. The fourth assignment of error is without merit, and, accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

CHRISTLEY, J., concurs.

FORD, P.J., concurs with concurring opinion.

FORD, P.J., concurring. Although I agree with the majority that the *Scott* case interdicted the law of *Milkovich* as it pertained to the issue of whether the subject article in question was in the nature of fact or opinion, this writer is not persuaded that *Scott* affected the conclusion by the *Milkovich* court that the appellant here was to be considered a private figure.

The appellee asserts that the holding of *Anderson* v. *Liberty Lobby, Inc.* (1986), 477 U.S. 242, should somehow apply to the present appeal. *Anderson, supra,* involved the nature of a trial court's inquiry in a summary judgment exercise where the *New York Times* "clear and convincing" evidence requirement applied. The court in *Anderson* held that:

"[W]here the factual dispute concerns actual malice, clearly a material issue in a *New York Times* case, the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." (Footnote omitted.) *Id.* at 255-256.

However, in view of the Ohio Supreme Court's ruling in *Lansdowne* v. *Beacon Journal Pub. Co.* (1987), 32 Ohio St. 3d 176, 512 N.E. 2d 979, it would appear inferentially that the fact that an individual would be determined to be a private person rather than a public figure or official would not alter the requirements for a nonmoving party in a summary judgment exercise in a libel case.

The metamorphosis of libel in Ohio has insulated the concerns for the chilling effect by moving to equatorial splendor for the Fourth Estate. The effect of the *Scott* and *Lansdowne* decisions in Ohio has effectively muted this traditional cause of action.

While a free press is fundamental to a free and democratic society, the quest for a more sensible set of criteria to balance the dignity and privacy of

the individual with that of First Amendment guarantees to ensure the guardian character of the press is a quest that it is hoped will achieve a greater harmony and clarity in the future.