**NORTH COAST CABLE LIMITED PARTNERSHIP et al., Appellants,**

v.

**HANNEMAN, Appellee.**

[Cite as *N. Coast Cable L.P. v. Hanneman* (1994), 98 Ohio App.3d 434.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66061.

Decided Nov. 7, 1994.

*Baker & Hostetler, Patrick J. Jordan* and *Daniel P. Mascaro*, for appellants.

*Hermann, Cahn & Schneider* and *Kerry S. Volsky*, for appellee.

PATRICIA A. BLACKMON, Judge.

North Coast Cable Limited Partnership, North Coast Cable Company and Lee Howley, Jr. (collectively "NCCLP"), plaintiffs-appellants, appeal the trial court's decision granting summary judgment to Gerhard J. Hanneman, defendant-appellee, in their defamation action. NCCLP assigns the following three errors for our review:

"I. The trial court erred in finding that an absolute privilege protected appellee from the defamation claims based on statements made during the city council committee meeting.

"II. The trial court erred in granting appellee's motion for summary judgment on the defamation claims based on statements made after the committee meeting.

"III. The trial court's ruling should be reversed because, even if summary judgment was appropriate on appellants' defamation claims, appellants should have been permitted to proceed with their other claims."

Having reviewed the record and the arguments of the parties, we affirm the decision of the trial court in part and reverse it in part. The apposite facts follow.

In 1974, North Coast Cable Limited Partnership was formed for the purpose of applying to the city of Cleveland for development of a cable television franchise. In 1985, NCCLP hired Gerhard Hanneman along with the ELRA Group, Inc. to help NCCLP prepare its proposal. The proposal was submitted in March 1985 and was approved in July 1985. From July 1985 through February 1986, Hanneman helped NCCLP to negotiate its franchise agreement, and agreements with Ohio Bell Telephone Company and Viacom. Hanneman was fired in March 1986. Thereafter, NCCLP obtained the necessary financing and began construction of its cable television system.

In 1988 and 1989, several of NCCLP's early minority investors sold their interests to the general partners of NCCLP. On December 12, 1990, Hanneman appeared before a meeting of the Cleveland City Council's Public Utilities Committee and testified, among other things, that the original minority investors were a "sham." He stated that the minority investors had agreed in advance to sell their interests after the franchise was established. Some of his statements were reported in radio news broadcasts by a local journalist who spoke briefly with Hanneman outside the hearing.

On April 4, 1991, NCCLP filed a complaint against Hanneman for defamation. The complaint also alleged that Hanneman breached his duty of good faith and loyalty as a partner and his duty of good faith and fair dealing. Finally, the complaint alleged that Hanneman tortiously interfered with the franchise agreement between NCCLP and the city of Cleveland. NCCLP sought a total of $300,000 in damages.

In his answer to the complaint, Hanneman claimed that the complaint failed to state a claim for which relief could be granted, that his statements were true, and that his statements were privileged. On May 22, 1992, Hanneman filed a motion for summary judgment. He argued that his statements made during the committee hearing were privileged, since they were made during a legislative or judicial proceeding. He also argued that NCCLP's claims of tortious interference with contract, breach of duty of good faith and fair dealing, and breach of duty of good faith and loyalty as a partner should be dismissed because they were based upon allegedly defamatory statements that were privileged.

In their response to Hanneman's summary judgment motion, NCCLP argued that Hanneman's statements were not absolutely privileged. NCCLP claimed that those who voluntarily appeared before judicial committees were only entitled to a qualified privilege. NCCLP also argued that triable issues of fact remained as to whether Hanneman's statements were made with actual malice. It also argued that any privilege applicable to Hanneman's statements before the committee did not absolve him from liability for the business tort claims made by NCCLP.

On July 27, 1993, the trial court granted Hanneman's motion for summary judgment on all counts. The trial court found that Hanneman's statements during the committee hearing were absolutely privileged. The court also found that the statements allegedly made by Hanneman after the hearing were statements of opinion rather than fact and were not actionable. With respect to NCCLP's business tort claims, the trial court found that these claims were based on the same statements for which absolute privilege was found to apply. The court cited *Bio/Basics Internatl. Corp. v. Ortho Pharmaceutical Corp.* (S.D.N.Y. 1982), 545 F.Supp. 1106, which held that a defendant's immunity for statements made before a legislative committee should also immunize him against a business tort action based on the same statements. This appeal followed.

In its first assignment of error, NCCLP argues that the trial court erred in finding Hanneman's statements before the committee were protected by an absolute privilege. NCCLP argues the absolute privilege applies only to witnesses who were subpoenaed to testify before legislative committees and voluntary witnesses have only qualified immunity. We disagree.

In *Costanzo v. Gaul* (1980), 62 Ohio St.2d 106, 110, 16 O.O.3d 134, 136, 403 N.E.2d 979, 982, the court held statements made before a legislative committee are absolutely privileged if made during the course of official proceedings by members of local governing bodies when the statements relate to a matter under consideration, discussion, or debate. The rule makes for open and frank discussion of the issues that are the subject of the proceedings. The statements made by Hanneman during the committee hearings were relevant to the committee's evaluation of the franchise agreement with NCCLP. Hanneman's comments pertained to NCCLP's use of minority investors in preparing its franchise proposal. His comments about NCCLP's attitudes toward minorities and women were pertinent to evaluating the legitimacy of the minority investments, especially since many of the minority investors' interests were brought back by NCCLP after the franchise was awarded to NCCLP.

NCCLP argues that the absolute privilege should be limited to cases in which a witness testifies under subpoena. In this case, Hanneman received a letter from the committee asking him to appear and give testimony at the committee hearing. While the letter does not have the same coercive power as a subpoena, it nevertheless reveals that Hanneman's decision to testify before the hearing was not entirely voluntary. In *Executone of Northwest Ohio v. Mgt. Communication Consultants, Inc.* (July 15, 1993), Lucas App. No. L–83–101, unreported, the court stated that absolute immunity applied to statements made by a witness before a legislative body such as a city council. We find the interests of free exchange and debate, which were highlighted in *Executone,* are equally important

when a committee has requested testimony from a witness who is in a position to provide helpful, pertinent information.

▮ The letter sent to Hanneman by the Public Utilities Committee stated the committee's belief that Hanneman had "information valuable to the committee's review" of the city's franchise agreement with North Coast Cable. The fact that a witness has agreed to testify voluntarily instead of having to be compelled to do so by subpoena does not, in and of itself, make his testimony any less significant or less deserving of the protection afforded by an absolute privilege. Consequently, we agree with the trial court's finding of absolute privilege and find NCCLP's first assignment of error meritless.

▮ NCCLP argues in its second assignment of error the trial court erred in granting summary judgment to Hanneman. The triable issue of fact remaining is the communication made to the radio news reporter Vic Gideon. The communication, NCCLP urges, is false and brands NCCLP a liar. The communication NCCLP refers to is the following:

"Well I think [the committee's] intent is to make North Coast be truthful about its dealings with the City and the flavor I got from the meeting today was that if North Coast doesn't comply, that they would consider stronger action such as revoking the franchise and asking another operator, to, you know, to buy North Coast out."

Hanneman says this communication is not defamatory and is his opinion, which is not actionable. The trial court held the communication to the reporter Vic Gideon was opinion and that it was privileged under the First Amendment. Additionally, it held the communication subject to the rule of innocent construction, which requires the adoption of the innocent meaning when defamatory words are subject to both innocent and defamatory meaning. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423, 453 N.E.2d 666, 669.

▮ We review the court's granting of summary judgment *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination."). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C): "The reviewing court evaluates the record * * * in a light most favorable to the non-moving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1143.

Civ.R. 56 provides summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273. It is well settled the party seeking summary judgment bears the burden of showing no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

However, the nonmoving party must produce evidence on any issue for which he or she bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a non-movant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

In our opinion, NCCLP did establish a genuine issue for trial. It specifically showed Hanneman's statement. The statement, it argues, implies that NCCLP was untruthful in its franchise negotiations with the city of Cleveland. Hanneman's statement was made after he made the privileged communication before the committee, which privileged communication stated that NCCLP had used sham minority investors in order to secure its cable franchise. NCCLP claimed the statements by Hanneman were false. Based on these facts, we believe a reasonable factfinder could conclude the statements by Hanneman assert that NCCLP lied to the city to obtain the cable franchise. Consequently, we find that a triable issue for the factfinder does exist.

The trial court took the view as a matter of law that Hanneman's statement was his opinion and privileged under the First Amendment. We disagree.

In 1990, the United States Supreme Court settled the confusion caused by the dictum in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789. (*Gertz's* dictum held that opinions were privileged First Amendment communications.) *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 110

S.Ct. 2695, 111 L.Ed.2d 1, reversing *Milkovich v. The News–Herald* (1989), 46 Ohio App.3d 20, 545 N.E.2d 1320. In *Milkovich,* the Supreme Court set the standard for defamation cases even though the challenged communication may express an opinion. The Supreme Court held a prima facie defamation suit exists when the statement is false and the statement can be reasonably interpreted as stating an actual fact about the individual. The Supreme Court went further and held that pure opinion statements are not actionable under a defamation lawsuit because such statements are not provably false and cannot reasonably be interpreted as stating actual facts about the plaintiff.

A pure opinion exists in this example: "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin." A defamatory opinion exists in this example: "In my opinion Jones is a liar." Simply couching the statement in opinion terms does not dispel the factual implications contained therein, the Supreme Court said.

The difference between the two examples is the former does not state a fact that can objectively be proven false whereas the latter, which is actionable, states a fact ("Jones is a liar") is subject to disproof.

Hanneman argues his statement is not defamatory and implies his statement is pure opinion. We disagree. In Hanneman's statement, it could reasonably be interpreted as stating an actual fact about NCCLP and it could be argued that the statement contains provable false facts.

A defamatory communication is a publication that tends to harm the reputation of another. The reputation of another is harmed when the publication lowers the community's estimation of that person or when it deters third parties from associating or dealing with that person. See Restatement of the Law 2d, Torts (1977) 156, Section 559. Opinions are defamatory if they sufficiently derogate another's reputation by causing harm to his reputation, lowering him in the estimation of the community or deterring third parties from dealing with him. *Id.*

In this case, we find the statement to mean that NCCLP lied its franchise dealings with the city and we find this to be defamatory, *i.e.,* capable of causing harm to NCCLP's reputation, lowering it in the estimation of the community, and deterring third parties from dealing with it. Consequently, a reasonable factfinder could conclude Hanneman's defamatory statement was indeed understood as defamatory by those who received it, which brings us to the trial court's final conclusion that Hanneman's statement was not actionable under the innocent construction rule. The innocent construction rule finds rich history in some early federal diversity cases, primarily in the Seventh Circuit. It was used in the Sixth Circuit in a 1965 case when that court held the statement of a receiver was not

libelous when the statement urged the receiver was appointed for assets of the distributor. The court held these words were susceptible of innocent construction that a receiver was appointed for assets of the distributorship or agency and not the libelous construction that a receiver was appointed for assets of an individual, who happened to be a distributor. *England v. Automatic Canteen Co. of Am.* (C.A.6, 1965), 349 F.2d 989.

This doctrine was further defined to require reading the whole text and giving words their natural and obvious meaning and not their calumnious, evil meaning. *Id.* at 991. Ohio adopted this rule in *Yeager, supra,* 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666.

We, nevertheless, find it inapplicable to this case. Moreover, the word untruthful is not susceptible of two meanings. It means clearly what it says. The concern is whether the entire text of Hanneman's statement to the reporter is subject to two meanings. We think not. Hanneman's statement was susceptible of only one meaning, *i.e.,* that is untruthful. Hanneman's statement expressed his opinion, which opinion is capable of a defamatory meaning. Embodied in his opinion were actual assertions about NCCLP. The assertions were that NCCLP was untruthful in its cable franchise dealings with the city and that it could lose its franchise if it did not tell the truth. These assertions have only one meaning. NCCLP's second assignment of error is hereby sustained.

■ NCCLP next argues that the trial court erroneously granted summary judgment on its business tort claims. This assignment of error has merit. The trial court based its grant of summary judgment on *Bio/Basics Internatl. Corp. v. Ortho Pharmaceutical Corp., supra,* 545 F.Supp. at 1115, which held the absolute privilege for statements made during a legislative proceeding immunizes the speaker from liability for business torts based upon the same statements. As discussed in our evaluation of NCCLP's second assignment of error, we find Hanneman's statements made outside the hearing were not protected by any privilege. Consequently, the trial court's grant of summary judgment on NCCLP's business tort claims was erroneous. NCCLP's third assignment of error is well taken.

We affirm the trial court's grant of summary judgment as it pertains to claims based on statements made by Hanneman during the committee hearing. Because we find that a genuine issue of fact existed as to whether Hanneman's statement outside the hearing was capable of being understood as defamatory, we reverse the trial court's order of summary judgment as it pertains to that statement. We also reverse the trial court's grant of summary judgment on

444

NCCLP's business tort claims. This case is hereby remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

HARPER and NUGENT, JJ., concur.