OPINION
{¶ 1} Joe Rich ("Rich") appeals the April 10, 2003 judgment entry of the Ashtabula County Court of Common Pleas granting Community Newspaper Holdings, Inc.'s ("Community") motion to dismiss for failure to state a claim, to which Donald Glenn ("Glenn") joined. For the reasons set forth below, we affirm the decision of the trial court as it pertains to counts two through five, but reverse and remand this matter as it pertains to count one.
 {¶ 2} On August 5, 2002, Glenn wrote a letter to the superintendent of the Ashtabula Area City Schools in regards to Rich. In this letter, Glenn stated:
 {¶ 3} "I understand that Mr. Joe Rich has been added to the Lakeside High School football coaching staff for the current season, and I am somewhat appalled at this news.
 {¶ 4} "Are you aware that Mr. Rich was fired from his head coaching job at Sts John/Paul High School a year or so ago for supposedly having his entire team beat up on one of the players on the team. I understand that he even allowed this activity to continue in the locker room after the team left the field where an assistant coach intervened and brought it to an end. Mr. Rich supposedly was fingered as the instigator and urged it on.
 {¶ 5} "The player was the son of Doctor Pleasant, a local area Veterinarian. I understand that Dr. Pleasant spared the school the publicity of not sueing [sic] the school provided that Mr. Rich was fired.
 {¶ 6} "Mr. Rich's addition to the Lakeside staff is a disgrace and mind boggling in view of what he has done. I don't know about your office, but this news has created quite a stir in my community and concern for the safety of the athletes has become a real concern.
 {¶ 7} "Mr. Rich is not a teacher in the system, mainly because he does not have [an] education beyond high school, and no football playing experience beyond the high school level. All of his coaching stints have been very brief which may be a result of his inability to control his anger.
 {¶ 8} "It appears that there is no real reason to keep Mr. Rich around.
 {¶ 9} "I have grand children in the system and I am a sincere supporter of the Ashtabula Area City Schools. I am anxious to know if your office plans to retain Mr. Rich as a coach considering his outrageously shameful conduct.
 {¶ 10} "We may be able to stop a damaging incident before it happens, and keep an out of control bully coach from walking our sidelines. In any case we don't want to reward an individual who is a threat to putting our young people at risk."
 {¶ 11} Glenn wrote a second letter to the superintendent on August 21, 2002:
 {¶ 12} "This is my second letter to you in an attempt to determine the status of Mr. Joe Rich in regards to the Lakeside High School coaching staff.
 {¶ 13} "This is a very important issue in my community, though it may not be as important to you.
 {¶ 14} "I ask that you give me a status report on Mr. Rich as soon as possible, so that I may pass it on to the same very interested parents. Time is running out."
 {¶ 15} The Ashtabula Star Beacon ("Star Beacon"), which is owned by Community, ran the following letter from Glenn in the September 21, 2002 "Letters to the Editor" section:
 {¶ 16} "Schools in America are national treasures, yet things happen as a result of the irresponsibilities and failures of our school administrators. Something we are not proud of is the poor job done by administrators in selecting some of our athletic coaches.
 {¶ 17} "I recently wrote to the superintendent of the Ashtabula Area City Schools expressing my displeasure at the addition of Mr. Joe Rich to the Lakeside High School coaching staff. I asked Dr. Licate if he was aware that Mr. Rich was let go from the head football coaching job at Ss. John and Paul High School for supposedly having his entire team beat up on one of the players for what Mr. Rich regarded as an infraction of the rules. He supposedly allowed this activity to continue in the locker room after the team had left the playing field. At that point, an assistant coach intervened and brought it to an end. Mr. Rich was apparently fingered as the instigator of the incident as well as the key figure urging it on.
 {¶ 18} "* * *
 {¶ 19} "I would like for the parents and the other constituents of our school district to help put an end to these outrageous acts of indignity.
 {¶ 20} "* * *
 {¶ 21} "It is time for us to start acting to eliminate these blatant acts of disrespect to the students and parents of our school district. Measures in certain communities of the district are now being taken to challenge some of their provocative decisions. I ask that you write to our school board and voice your displeasure. Start petitions to eliminate certain individuals in our system who continue to make unbelievable mistakes and misjudgments, and those who have proven to be highly unproductive in the system."
 {¶ 22} On October 22, 2002, the Star Beacon published another letter from Glenn in its "Letters to the Editor" section, stating:
 {¶ 23} "I read the letter, written to you by Mr. Lipps, who no doubt is a very good friend of (name deleted by editor-DM). He was obviously referring to the article I wrote about (name deleted by editor-DM), even though no names were mentioned.
 {¶ 24} "* * *
 {¶ 25} "I [sic] tell you one thing, I had nothing to do with what (name deleted by editor-DM) did at SS. John and Paul, and I thank God that I wasn't there when he did it. I am sure the school did not fire him for being a great guy and an outstanding football coach."
 {¶ 26} At the end of the second letter to the editor, the Star Beacon added:
 {¶ 27} "Don, I will not allow you to defame the name of anyone else in this portion of the newspaper. After all, it does have my name on it. You seem disturbed that someone might do the same to you, even though your name was not mentioned one bit. Feels good, huh? * * *."
 {¶ 28} On November 21, 2002, Rich filed a five count complaint against Thompson Newspapers, Inc.[1] and Glenn. Rich alleged that Glenn defamed Rich in his two letters to the superintendent, as well as in the two letters to the editor. Rich also alleged that Glenn intentionally inflicted emotional distress on Rich through these letters. Rich alleged that Thompson defamed him when it published the two letters to the editor.
 {¶ 29} On December 24, 2002, Community filed a motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6). On January 27, 2003, Glenn moved to join in Community's motion to dismiss. The trial court granted Glenn's motion to join and the joint motion to dismiss. In so doing, the trial court dismissed Rich's complaint against both Community and Glenn.
 {¶ 30} Rich timely appealed the trial court's decision and raises the following assignments of error:
 {¶ 31} "[1.] Whether the trial court erred by dismissing Count 1 of the Complaint against appellee, Glenn, by reason of the fact that the expressions contained in Appellee, Glenn's, letters to Appellant's employer were protected expressions of opinion.
 {¶ 32} "[2.] Whether the trial court erred by dismissing the remaining counts of the Complaint against both Appellees by reason of the fact that the expressions contained in Appellee, Glenn's, Letters to the Editor were protected expressions of opinion."
 {¶ 33} Since both assignments of error challenge the trial court's granting of the motion to dismiss, we will first address the proper standard of review.
 {¶ 34} In reviewing a judgment that grants a Civ.R. 12(B)(6) motion to dismiss, we must "independently review the complaint to determine whether the dismissal was appropriate." Ferreri v. ThePlain Dealer Publishing Co. (2001), 142 Ohio App.3d 629, 639, citing Greeley v. Miami Valley Maintenance Contr., Inc. (1990),49 Ohio St.3d 228. In doing so, "[t]he factual allegations of the complaint and items properly incorporated therein must be accepted as true. Furthermore, the plaintiff must be afforded all reasonable inferences possibly derived therefrom. * * * It must appear beyond doubt that [the] plaintiff can prove no set of facts entitling her to relief. * * *." Vail v. The Plain DealerPublishing Co., 72 Ohio St.3d 279, 280, 1995-Ohio-187 (internal citations omitted).
 {¶ 35} The essential elements of a defamation claim are: (1) assertion of a false statement; (2) the false statement must be defamatory; (3) the false statement was published by the defendant; (4) the publication was the proximate cause of an injury to the plaintiff; and (5) the defendant possessed the required degree of fault. Celebrezze v. Dayton Newspapers, Inc.
(1988), 41 Ohio App.3d 343, 346-347, citing Dupler v. MansfieldJournal Co. (1980), 64 Ohio St.2d 116.
 {¶ 36} In his first assignment of error, Rich argues that, even if the trial court properly granted the motion to dismiss as to counts two through five, the trial court erred in dismissing count one because it did not address the letters to the superintendent in the judgment entry granting the motion to dismiss.
 {¶ 37} In Rich's first count of his complaint, he alleges that the two letters Glenn sent to the superintendent asserted false statements that defamed him. Moreover, Rich alleges that the publication of the letters injured him in his profession. Finally, Rich alleges that Glenn knew of the statements falsity or that Glenn acted with reckless disregard of the truth or falsity of the statements.[2] Thus, Rich set forth sufficient allegations of defamation concerning these letters.
 {¶ 38} In its judgment entry granting the motion to dismiss, however, the trial court failed to address the letters to the superintendent. Rather, the trial court only addressed the two letters to the editor in finding that the statements were protected expressions of opinion. Since the trial court failed to review the merits of count one of Rich's complaint, we will not address the issue of whether count one should have been dismissed. See West v. West (Sept. 2, 1997), 10th Dist. No. 96APE11-1587, 1997 Ohio App. LEXIS 4032, at *14; Cashion v.Segal (May 15, 1996), 9th Dist. No 17411, 1996 Ohio App. LEXIS 1913, at *12-*13.
 {¶ 39} Rich's first assignment of error is sustained.
 {¶ 40} Rich claims in his second assignment of error that the letters to the editor contained actionable defamatory statements of fact, rather than protected statements of opinion.
 {¶ 41} Expressions of opinion are provided protection from liability. See Wampler v. Higgins, 93 Ohio St.3d 111,2001-Ohio-1293, syllabus; Vail, 72 Ohio St.3d at 281; Scott v.News-Herald (1986), 25 Ohio St.3d 243, 250. "[T]he determination of whether allegedly defamatory language is opinion or fact is a question of law to be decided by the court." Vail,72 Ohio St.3d at 280, citing Scott, 25 Ohio St.3d at 250. In so determining, the totality of the circumstances must be examined.Scott, 25 Ohio St.3d 243, at paragraph one of the syllabus. The four factors to consider are: (1) the specific language used, (2) whether the statement can be verified, (3) the statement's general context, and (4) the broad context in which the statement appears. Id. at 250. "Each of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented." Vail,72 Ohio St.3d at 282.
 {¶ 42} In the letters to the editor, Glenn expressed an opinion concerning his displeasure with the addition of Rich to the Lakeside coaching staff. In doing so, he seemingly made statements of fact regarding an incident that led to Rich being let go from his previous employment. However, "[m]erely because an editorial article contains factual references does not transform an opinion into a factual article." Sikora v. PlainDealer Publishing Co., 8th Dist. No. 81465, 2003-Ohio-3218, at ¶ 19. Glenn modified these statements with words such as "supposedly" and "apparently." Thus, in examining the specific language used, the statements "resemble * * * `loosely' definable,' `variously interpretable,' `indefinite,' and `ambiguous' statements." Wampler, 93 Ohio St.3d at 128
(citation omitted). Even if we concluded that the specific language weighed in favor of a finding of actionable defamation, this would not necessitate a finding that the trial court erred in finding that the totality of the circumstances required dismissing the complaint. See, id., citing Scott,25 Ohio St.3d at 254.
 {¶ 43} In examining the verifiability of the statements, because "a reader cannot rationally view an unverifiable statement as conveying actual facts," id. at 129 (citation omitted), the relevant issue is whether the defendant implies that he or she has first-hand knowledge that substantiates the statements. Vail, 72 Ohio St.3d at 283. In this case, Glenn's modification of the statements with terms such as "supposedly" and "apparently" clearly indicate that the statements are not based on his first-hand knowledge. Again, even if we found that both the specific language utilized and the verifiability of the statements weigh in favor of a finding of actionability, the totality of the circumstances may still support the trial court's conclusion that the statements were protected speech. SeeWampler, 93 Ohio St.3d at 129, citing Scott,25 Ohio St.3d at 252.
 {¶ 44} In considering the full context of the statements, "[i]t is the language of the entire article, and not a singular factual reference, that determines whether an article is fact or opinion." Sikora, 2003-Ohio-3218, at ¶ 19. We find these statements to be "more typical of persuasive speech than factual reporting." Vail, 72 Ohio St.3d at 282. The statements that concern Rich are cited in an example of the school administrators' failures, which, in turn, is utilized in an attempt to provoke fellow members of the community to take action "to challenge some of [the school administrator's] provocative decisions." Moreover, Glenn is "not making an attempt to be impartial and no secret is made of his bias." Scott,25 Ohio St.3d at 253. Thus, this factor clearly weighs in favor of finding Glenn's letters to the editor as not actionable in defamation.
 {¶ 45} "Some types of writing or speech by custom orconvention signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." Wampler,93 Ohio St.3d at 131 (emphasis sic) (citation omitted). "There is a presumption that language contained in the editorial section of a newspaper is the opinion of the writer." Verich v. VindicatorPrinting Co., Inc., 152 Ohio App.3d 127, 2003-Ohio-1210, at ¶18, citing Wampler, 93 Ohio St.3d at 131. Likewise, letters to the editor are a common forum for personal opinion. Wampler,93 Ohio St.3d at 131. Thus, this factor considerably weighs in Glenn's favor.
 {¶ 46} Examining the four factors, we find that, under the totality of the circumstances, the statements contained in the letters to the editor are non-actionable expressions of opinion. Thus, Rich's second assignment of error is without merit.
 {¶ 47} For the foregoing reasons, we hold that, by failing to address the letters to the superintendent in its judgment entry, the trial court did not render the appropriate legal analysis to properly dismiss count one of Rich's complaint pursuant to Civ.R. 12(B)(6). This ruling, however, includes no judgment or decision as to the merits of count one. We also hold that the letters to the editor were protected expressions of opinion and, thus, the trial court properly dismissed the remaining counts of Rich's complaint. We, therefore, affirm the decision of the trial court as to counts two through five, but, as to count one, we reverse and remand the matter for further proceedings consistent with this opinion.
Ford, P.J., and Christley, J., concur.
[1] Thompson was the prior owner of the Star Beacon. By joint motion, Community was substituted for Thompson on February 11, 2003.
[2] As a coach at a public high school, Rich arguably was a public official, see Scott v. News-Herald (1986),25 Ohio St.3d 243, 247-248 (overruling Milkovich v. News-Herald (1984),15 Ohio St.3d 292, which found that Milkovich, as coach, was not a public figure), and, as such, in a defamation action, Rich "may recover only upon clear and convincing proof of actual malice,"Dupler v. Mansfield Journal Co., Inc. (1980),64 Ohio St.2d 116, 119, i.e. publishing a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan (1964),376 U.S. 254, 280.