**Stresen-Reuter v. Hull**
*[Cite as 6 AOA 191]*

*Case No. S-89-27*
*Sandusky County, (6th)*
*Decided August 3, 1990*

*John J. McHugh III and Kimberly S. Stepleton, for appellant.*

*James W. Hart and David A. Laing, for appellees.*

This is an appeal from a June 23, 1989 judgment entry of the Sandusky County Court of Common Pleas. The judgment entry appealed from granted summary judgment to appellee, Jonathan F. Diller, M.D., who had been sued for defamation, civil conspiracy, and tortious interference with an employment relationship.[1] Appellant, Lea Stresen-Reuter, filed a voluntary dismissal of the civil conspiracy claim, and the remaining claims were terminated when the Sandusky County Court of Common Pleas granted summary judgment to appellee.

Appellant raises two assignments of error on appeal which state:

1. The trial court erred in entering summary judgment against appellant on her claim for defamation.

2. The trial court erred in entering summary judgment against appellant on her claim for tortious interference in her employment relationship with Memorial Hospital.

Ohio law establishes that before summary judgment can properly be granted, three requirements must be met. Those requirements are:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66.

This case must be reviewed with the above three requirements in mind.

In her first assignment of error, appellant asserts that material questions of fact relating to her defamation charge remain in dispute, preventing summary judgment. To determine whether appellant's assertion is correct, we must review: (1) the elements of defamation in Ohio; and (2) the record in this case.

Ohio courts have stated that defamation exists when a false and defamatory statement about a person is published to a third person. *McCarthy v. Cincinnati Enquirer, Inc.* (1956), 101 Ohio App. 297, 300. However, liability for defamation exists only if: (1) the injured party can demonstrate either that the defamatory statement was actionable per se or created special harm; and (2) the publication was unprivileged. One way to demonstrate that a defamatory statement was actionable per se is to show that the statement, by the very meaning of the words used, tends to injure a person in the person's trade or profession. See, *Hedrick v. Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211, 215. A court must determine whether a statement is defamatory *per se* because the determination involves a question of law. See *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136. Once a court has determined as a matter of law that a statement is defamatory per se the next consideration is whether the statement was protected by a privilege. Statements "between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege." *Gray v. General Motors Corp.* (1977), 52 Ohio App.2d 348, 351.

Appellant alleges that the facts of this case, as developed in her deposition, as well as in exhibits and affidavits, show that appellee defamed appellant in a manner which injured appellant in her trade and profession. The undisputed facts in this case are as follows. At the time the alleged defamation occurred, appellant was employed at a hospital as vice president of nursing services. As vice president of nursing services, appellant had the responsibility over various aspects of the nursing department, including postings and biddings and selection of staff for certain positions, establishing acuity systems to determine the kind of staffing appropriate for shifts, and orientation for staff nurses. Appellee was a doctor with staff privileges at the same hospital where appellant was employed. Appellee held the position of chief of staff during

the time the alleged defamation occurred. A survey was distributed to the nursing staff for completion. The survey contained six questions and requested those completing the survey to:

"Please express your personal opinion on the following questions using the scale 0-5, 0 indicating 'poor' or negative, 5 indicating 'excellent' or positive."

The six questions asked were:

"1. Do you agree with the philosophy of nursing as promoted by this nursing administration?

"2. Do you feel your opinion counts in planning or decision making?

"3. Do you feel free to express your opinions or concerns without fear of repercussion?

"4. Do you feel that nursing administrative decisions are arrived at and carried out in a fair manner?

"5. Please rate your assessment of the morale of the nursing staff at our hospital.

"6. Do you feel your rating in the question above is a result of or a reflection on this nursing administration?"

The results of the survey show a clear majority of responses fell in the poor or negative ratings. In addition to the six questions, the summary of the survey results included three type-written pages of selected direct quotes from comments which participants wrote on the survey sheets. Some of the comments referred to appellant by name or by her title. Appellant testified that the survey was defamatory and that it affected her adversely in her trade and profession to such an extent she felt she was unable to continue her work as vice president of nursing services. Specifically, appellant believed she had lost credibility with the nursing staff. Appellant therefore tendered her resignation and accepted $22,000 in severance pay. Both appellant and appellee agree that appellee presented the summary of the survey results to the medical executive committee, and appellee does not dispute that the summary of the survey results was distributed to the nursing staff. Some dispute does exist as to who was responsible for the distribution of the summary of the survey results to the nursing staff, as will be discussed later. The judgment entry from which this appeal stems states:

"This matter came on to be considered upon the motion of defendant Jonathan F. Diller, M.D. for summary judgment. After reviewing the evidentiary materials and memoranda submitted, the court finds that there is no genuine issue as to any material fact, and that defendant is entitled to judgment as a matter of law. Therefore, IT IS ORDERED that defendant's motion for summary judgment be, and it hereby is, granted in favor of defendant and against plaintiff."

Because the judgment entry of the Sandusky County Court of Common Pleas is general in its wording, we must determine: (1) whether a defamatory statement for which liability exists was published; (2) whether an absolute or qualified privilege can be asserted as an affirmative defense if a defamatory statement does exist; and (3) whether the qualified privilege was lost because the liable party had actual malice.

Appellee argued in his summary judgment motion in the trial court and his brief to this court that appellee has no liability for defamation because: "1. The alleged defamatory document is not actionable opinion." To support his assertion that the summary of survey results constitutes non-actionable opinion, appellee cites a 1986 case decided by the Supreme Court of Ohio. *Scott v. News-Herald* (1986), 25 Ohio St.3d 243. The syllabus in *Scott v. News-Herald* states:

"The totality of the circumstances must be examined to determine whether a published statement is constitutionally protected opinion." *Id.* at 243, paragraph one of the syllabus. *Scott v. News-Herald* was a case involving a public official, specifically a public school superintendent, who sued a newspaper for defamation after the newspaper published an article in its sports section which contained allegations that the public school superintendent had lied when testifying in a court of common pleas about circumstances surrounding a melee which occurred after a high school wrestling match. *Id.* at 243-244, 248. The Supreme Court of Ohio stated that:

"Expressions of opinion are generally accorded absolute immunity from liability under the First Amendment *** the determination of whether an averred defamatory statement constitutes opinion or fact is a question of law, properly within our purview today." *Id.* at 250. (Citations omitted.)

The Supreme Court of Ohio then adopted a four part test to be used when making a determination of whether or not a statement is opinion or fact. The test factors were announced as follows:

"First is the specific language used, second is whether the statement is verifiable, third is the general context of the statement and fourth

is the broader context in which the statement appeared." *Id.*

Appellant argues that *Scott v. News-Herald* is not applicable to this case because " *** constitutional implications are greatly lessened since this is not a media case." *Scott v. News-Herald* did involve a case brought by a public figure against a media defendant. However, at least one Ohio District Court of Appeals has applied the *Scott v. News-Herald* test to a case involving a defamation suit brought by a private individual against another private individual. *Fallang v. Hickey* (Aug. 31, 1987), Butler App. No. CA86-11-163, unreported. In *Fallang* one doctor, who had lost hospital privileges, appeared on a television talk show and made statements relating to the revocation of his hospital privileges which a second doctor considered defamatory to the second doctor. In addition, some materials were compiled by the first doctor and sent to several persons. The materials were accompanied by a cover letter written by the doctor who had lost his hospital privileges and were designed to persuade the recipients that the hospital privileges were wrongfully withdrawn. The second doctor sued asserting several claims, including defamation. However, the case was dismissed by the trial court pursuant to Civ.R. 12(B)(6). On appeal, the lower court's ruling was affirmed in part and reversed in part. When considering whether the statement in the cover letter was defamatory, the *Fallang* court stated:

"We further conclude, based upon an examination of the totality of the circumstances, that [the] allegedly defamatory statement in his cover letter is his opinion, and thus not a statement of fact about appellant's actions. Consequently, it is not actionable." *Id.*

We agree with the Twelfth District Court of Appeals of Ohio that the test announced in *Scott v. News-Herald* to determine whether a statement is opinion or fact is equally applicable to a defamation case involving suit by a private individual against another private individual.

Appellant also asserts, however, that "the comments published by Dr. Diller were stated in a manner indicating a factual basis ***." Because this case is on appeal from a summary judgment proceeding, the case has not been completely developed. Therefore, rather than address the summary of the survey results item by item, we will review one of the comments attached to the summary of survey results which was discussed in appellant's deposition. The comment stated:

"Our newest thrill on the tight rope of quality care is to staff the entire ICCU at night with only 2 RN's without assistance and pray that nothing serious happens."

Applying the four factors from *Scott v. News-Herald*, we find that the specific language used indicates this statement is more than opinion. Second, we find that the information contained in the statement is verifiable. Third, the general context of the statement indicates it is more than opinion since it is one of many statements which were communicated by individuals about the effect of policies implemented by appellant in the nursing department. And fourth, the broader context of the statement indicates it was more than opinion because it was part of the summary of survey results which was designed to communicate the concerns of the nursing staff to the doctors and administrators of the hospital. Accordingly, based on the totality of the circumstances, we find this statement is not opinion.

However, even if this statement or other statements in the summary of survey results are found to constitute opinion, we note that a recent decision from the United States Supreme Court rejected the assertion that all opinion is non-actionable because of First Amendment protections. *Milkovich v. Lorain Journal Co.* (June 21, 1990), 58 U.S.L.W. 4846. *Milkovich* is a companion case to *Scott v. News-Herald, supra.* *Milkovich* was the case brought by a high school wrestling coach who was included in the article on the sports page of the newspaper which stated that the coach and the superintendent of schools had lied when giving testimony in the Franklin County Court of Common Pleas about the events surrounding a melee following a wrestling match. *Milkovich* has a long procedural history, which includes an appeal to the Supreme Court of Ohio after summary judgment was granted and affirmed. The Supreme Court of Ohio reversed and remanded the case after stating that the statements in the sports article were statements of fact, rather than opinion. *Id.* at 4847 (Citing *Milkovich v. News-Herald* (1984), 15 Ohio St.3d 292, 298-299.) *Milkovich* was overruled by the first paragraph of the syllabus in *Scott v. News-Herald, supra.* The Supreme Court of Ohio ruled in *Scott v. News-Herald* that the statements in the sports article were opinion. *Scott v. News-Herald, supra* at 254. As a result, the Eleventh District Court of Appeals of Ohio, considering *Milkovich* for a second time following the remand by the Supreme Court of Ohio to the

trial court, which had again granted summary judgment, affirmed the summary judgment ruling on the basis that the statements in the article were opinions and were non-actionable. *Milkovich v. News-Herald* (1989), 46 Ohio App.3d 20, 23-24. The Supreme Court of Ohio denied certiorari. The United States Supreme Court granted certiorari and reversed and remanded the case. *Milkovich v. Lorain Journal Co., supra* at 4848, 4851. The United States Supreme Court stated:

"We granted certiorari *** to consider the important questions raised by the Ohio courts' recognition of a constitutionally-required 'opinion' exception to the application of its defamation laws." *Id.* at 4848.

The United States Supreme Court then explained the development of defamation law in cases from that court. The court then stated:

"[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection *** where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth. Similarly, where such a statement involves a private figure on a matter of public concern, a plaintiff must show that the false connotations were made with some level of fault as required by *Gertz.*" *Id.* at 4851.

The court went on to say:

"The dispositive question in the present case then becomes whether or not *a reasonable factfinder* could conclude that the statements in the Diadiun column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding." *Id.* (Emphasis added.)

Thus, the United States Supreme Court has ruled that in a defamation case brought by a private individual against a media defendant, it is a question of fact whether statements couched as opinion contain implications of factual assertions which are actionable. *Id.* We recognize that this case does not involve a media defendant, but we believe that the test announced in *Milkovich v. Lorain Journal Co., supra,* is equally applicable to this case, since we are unaware of any reason why a non-media defendant should be accorded greater protection than a media defendant when uttering opinions which imply factual assertions which are false and defamatory.

Accordingly, even if some of the statements do constitute opinion, appellant can still prevail on summary judgment if reasonable minds could differ on the factual question of whether the opinion statements are based on factual assertions which are actionable. Appellant can also prevail at trial if a jury determines the opinions are based on factual assertions which are actionable.

In regard to the specific comment we quoted earlier which contains the factual assertion that only two RN's staff the ICCU at night, we find that appellant has presented sufficient evidence to overcome summary judgment. Appellant testified that she discussed the comment with appellee before appellee distributed the summary of the survey results to the medical executive committee. Appellant stated to appellee that the comment was false, and appellee responded that he knew the comment was false. Appellee's response constitutes a party admission pursuant to Evid.R. 801(D)(2)(a). Not only is the comment false, it is defamatory per se as it tends to injure appellant in her trade and profession because it contains the assertion that appellant failed to provide appropriate staffing required to render adequate patient care.

Appellee's second contention in his summary judgment motion in the common pleas court and in his brief to this court is that he is not liable for defamation per se because he was merely acting as a conduit for the nursing staff. The statements complained of were not made by appellee. Appellee's second contention is not persuasive because Ohio courts have long recognized that a person can be liable for defamation even when the person's action amounted only to a republication of defamatory statements uttered by another. *Fowler v. Chichester* (1874), 26 Ohio St. 9, 14.

Appellee's third contention in his summary judgment motion in the common pleas court and in his brief to this court is that even if the statements are defamatory, appellee is not liable because he is protected by a qualified privilege. The qualified privilege which appellee asserts is the one we previously noted, that statements "between an employer and an employee or between two employees concerning the conduct of a third or former employee made in good faith concerning a matter of common interest are within the doctrine of qualified privilege." *Gray v. General Motors Corp., supra* at 351. Appellee argues that the transmission of the summary of the survey results to the medical executive

committee was necessary, because it involved a matter of common interest, namely the quality of patient care. Appellant argues that any potential qualified privilege in this case was lost, because the privilege was exceeded.

A qualified privilege protection accorded to communications between fellow employees or between employees and employers can be lost in one of two ways:

(1) first, the qualified privilege protection is lost if the defamatory communication is made to someone other than a fellow employee, or an employer, with a common interest; and (2) second, the qualified privilege protection for a defamatory statement is lost if the communication is made to a fellow employee, or to an employer, with a common interest, but the communication is the result of actual malice. *Id.* at 351. While both appellant and appellee devote time in their briefs discussing whether or not appellee was responsible for the distribution of the summary of survey results to the nursing staff, appellant does not develop any argument that the qualified privilege was lost because appellee made the communication to someone other than a fellow employee, or an employer, with a common interest. Rather, appellant argues that appellee is not protected by the qualified privilege because appellee acted with actual malice. Accordingly, we will focus our attention on the questions of actual malice defeating a qualified privilege.

In 1975, the Supreme Court of Ohio issued a syllabus which stated:

"A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not." *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, paragraph two of the syllabus. In the text of *Hahn v. Kotten* the Supreme Court of Ohio stated that:

"The correct rule as to the type of malice required to be established by plaintiff in connection with qualified privilege cases is simply and clearly stated *** [as a requirement of some showing that] *defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive.* "(Quoting *DeAngelo v. W.T. Grant Co.* (1952), 64 Ohio Law Abs. 366.) (Emphasis in the original.)

The occurrence of one definition for actual malice in the syllabus and another definition for actual malice in the text has led to some confu-

sion. The Eighth District Court of Appeals of Ohio recently issued a journal entry and opinion which reasoned that "the reporter" mistakenly defined actual malice in the syllabus as knowledge or reckless disregard as to the falsity of statements. *Jacobs v. Frank* (Dec. 21, 1989), Cuyahoga App. No. 56317, unreported. The *Jacobs v. Frank* court therefore concluded that "*** the actual malice required to defeat a qualified privilege is ill-will, spite or some ulterior motive." *Id.* at 9. We do not agree with the conclusion reached in the *Jacobs v. Frank* decision.

Our review of recent decisions from the Supreme Court of Ohio relating to the definition of actual malice in defamation cases reveals that the Supreme Court has continually relied on the definition of actual malice given in the syllabus of *Hahn v. Kotten, supra.* See, *e.g., Worrell v. Multipress, Inc.* (1989), 45 Ohio St.3d 241; *Varanese v. Gall* (1988), 35 Ohio St.3d 78, certiorari denied (1988), 487 U.S. 1206; *Constanzo v. Gaul* (1980), 62 Ohio St.2d 106. Furthermore, in *Worrell v. Multipress, Inc., supra,* the court applied the *Hahn v. Kotten* definition of actual malice to a defamation case brought by a private individual against a non-media defendant.

*Worrell v. Multipress, Inc.,* was a case involving a suit by an employee against his former employer for breach of contract of employment, defamation, mental distress and for the breach of a contract for the transfer of stock. *Worrell v. Multipress, Inc., supra* at 242. A jury trial resulted in a verdict finding the former employer liable for defamation as well as for breach of both contracts. The employer's appeal reached the Supreme Court of Ohio. One of the assignments of error raised in the Supreme Court of Ohio was that the jury instructions given by the trial court relating to libel were not correct. The libel charge came from statements made by the former employer about the employee in a prospectus which was distributed relating to the sale of company stocks. The employer claimed a qualified privilege, which the employee asserted was exceeded by actual malice. The Supreme Court quoted the syllabus definition of actual malice from *Hahn v. Kotten, supra.* The Supreme Court then quoted the trial court's jury instructions. The trial court's instructions indicated that a publication of libelous material is made with actual malice when the standard of knowledge or reckless disregard of the falsity of a statement is met. The trial court also instructed the jury that punitive damages could be awarded if actual

malice demonstrated by ill-will, anger, hatred, a spirit of revenge or reckless disregard of others legal rights was shown. *Worrell v. Multipress Inc, supra* at 248. The Supreme Court of Ohio stated:

"The trial court did not err in defining 'actual malice' with regard to the publication." *Id.* (Emphasis added.)

We therefore hold that the standard for actual malice announced in the syllabus of *Hahn v. Kotten* and approved in *Worrell v. Multipress, Inc.* applies in this case. We also note that appellant must show sufficient facts to demonstrate the actual malice so that a reasonable jury could find that the actual malice was shown with convincing clarity to defeat appellee's assertion of a qualified privilege, even in a summary judgment case. *Varanese v. Gall, supra* at paragraph one of the syllabus. Ultimately, the question of whether actual malice existed is a question of fact for a jury to decide. See, *Worrell v. Multipress, Inc, supra* at 248. Appellant has met her burden of showing that a reasonable jury could conclude that actual malice is shown with convincing clarity in this case. Appellant has presented a record which contains a party admission that appellee knew at least one of the statements in the summary of survey results was false before appellee distributed the summary of survey results to the medical executive committee. Appellant could also meet the standard requiring ill-will, spite, hatred, etc. if it were applicable, since the record demonstrates a party admission from appellee that he knew the questions in the survey were designed to elicit negative responses and that the purpose of the survey was to get appellant fired.

Appellant's first assignment of error is found well-taken.

In her second assignment of error, appellant asks this court to recognize her claim for tortious interference with employment as valid. Appellant argues that Ohio courts have already recognized business interference as an actionable claim. Business interference results in liability for " *** one who, without privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another ***." *Juhasz v. Quick Shops, Inc.* (1977), 55 Ohio App.2d 51, 57. The doctrine of business interference has been extended to apply even when the injured party was an at-will employee. *Smith v. Klein* (1985), 23 Ohio App.3d 146, 148. However, as appellee correctly points out in his brief, in this case no interference occurred which caused a third party, appellant's employer, to discontinue appellant's employment. In this case, appellant discontinued her employment by submitting her resignation. The personnel evaluation sheet for appellant, which is part of the record in this case, indicates that appellant's employer rated appellant's performance as excellent even after appellant resigned.

In addition, we are not persuaded by appellant's argument that this court should consider appellant constructively terminated. The cases cited by appellant relating to constructive termination involved egregious behavior on the part of the employers which resulted in coerced resignations. See, e.g. *Williams v. State, ex rel. Gribben* (1933), 127 Ohio St. 398; *Kinney v. Department of Adm. Services* (1984), 14 Ohio App.3d 33. No similar facts were shown in this case. We decline to extend existing precedent to accommodate appellant's claim for tortious interference with employment.

Appellant's second assignment of error is found not well-taken.

Therefore, this court finds that the Sandusky County Court of Common Pleas erred when it granted summary judgment to appellee on appellant's claim for defamation. The judgment of the Sandusky County Court of Common Pleas is reversed in part and affirmed in part. This case is ordered remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal.

HANDWORK, P.J., and RESNICK, J., concur. GLASSER, J., dissents.

[1] While appellant was not the only defendant in the original action, appellant is the only defendant remaining on appeal.