**SURDEL, Appellant,**

v.

**METROHEALTH MEDICAL CENTER et al., Appellees.**

[Cite as *Surdel v. MetroHealth Med. Ctr.* (1999), 135 Ohio App.3d 141.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74538.

Decided Oct. 4, 1999.

*Brian V. McNamee* and *Judith A. Lehnowsky,* for appellant.

*Ulmer & Berne, L.L.P., Jeffrey W. Van Wagner* and *Jay W. Pearlman,* for appellees MetroHealth Medical Center, MetroHealth Alpha Unit, Marsha Thompson, R.N., and Dr. JoAnn Jackson.

*McNeal, Schick, Archibald & Biro Co., L.P.A.,* and *John C. Cubar,* for appellee Bobi Lee Gallagher.

*Reminger & Reminger Co., L.P.A.,* and *John G. Peto,* for appellee Center for Children and Youth Services.

*Janik & Dunn* and *Steven J. Forbes,* for appellee Haven Counseling Services.

KARPINSKI, Presiding Judge.

Plaintiff-appellant, John Surdel, appeals from an order that granted summary judgment in favor of various counselors and medical providers who treated, counseled, or otherwise examined Surdel's minor daughters following reports that they might have been sexually abused. The trial court determined that the appellees were immune from civil liability pursuant to R.C. 2151.421(G)(1)(a). We affirm.

The record reflects that while John Surdel and Laurie Surdel were separated and experiencing marital difficulties in April 1993, Laurie Surdel took their three daughters, ages six, four, and two, to the Lorain County Children's Services ("LCCS") to be evaluated for possible sexual abuse by John Surdel. LCCS reported the matter to the Lorain County Sheriff's Department and the criminal investigation was conducted by Detective Timothy Mahar.

LCCS referred Laurie Surdel and the three children to the Center for Children and Youth Services ("CCYS"). CCYS operated a facility, known as the "Stop House," which provided counseling services for abused children. Bobi Lee Gallagher, a licensed independent social worker employed by CCYS, provided counseling to the Surdel children. In August 1993, Gallagher left her employment with CCYS and began her employment with Haven Counseling Services, where she continued to provide counseling services for the Surdel children until November 1996.

In November 1993, Lorain Detective Mahar referred the Surdel children to the MetroHealth Alpha Unit, a subspecialty referral clinic within the MetroHealth Medical Center, for a diagnostic physical examination to determine whether physical findings of sex abuse were present in any of the Surdel children. The children were examined by Marsha Thompson, a registered nurse. Thompson provided a report to Detective Mahar and Gallagher containing the findings of her medical history and physical examination of the three children together with diagnostic impressions based on these findings. Thompson's supervising physician was Dr. JoAnn Jackson. Jackson reportedly did not review Thompson's findings until after they had been reported to Detective Mahar.

John Surdel was subsequently prosecuted in Lorain County Common Pleas Court on multiple counts of felonious sexual penetration. Surdel was acquitted of the charges on March 14, 1996.

On April 11, 1996, Laurie Surdel commenced case No. 313889 in Cuyahoga County Common Pleas Court against John Surdel. On September 11, 1996, John Surdel filed case No. 314976, asserting tort claims against MetroHealth Medical

Center, MetroHealth Alpha Unit, Marsha Thompson, R.N., and Dr. JoAnn Jackson (hereafter "MetroHealth defendants"); LCCS; Bobi Lee Gallagher; Dr. Robert Soffer, a mental health supervisor for CCYS; Haven Counseling Services; and Laurie Surdel. The cases were consolidated on March 7, 1997.[1]

On February 11, 1998, John Surdel filed a notice, pursuant to Civ.R. 41(A), reflecting that he was voluntarily dismissing, without prejudice, his claims against defendant Laurie Surdel only. Pursuant to Civ.R. 41(A), Laurie Surdel contemporaneously gave notice that she was voluntarily dismissing, without prejudice, her claims against John Surdel. The reciprocal dismissal of the claims by and between John Surdel and Laurie Surdel was reflected in an order journalized on February 12, 1998.

This case proceeded on John Surdel's tort claims against the MetroHealth defendants, Bobi Lee Gallagher, CCYS, and Haven Counseling Services, all of whom are appellees herein. The appellees separately moved for a summary judgment and asserted among other things that they were immune from liability pursuant to R.C. 2151.421(G)(1)(a).[2] On April 24, 1998, the trial court granted the appellees' motions for summary judgment. John Surdel appealed,[3] raising one assignment of error:

"The trial court erred in granting defendants' motions for summary judgment based on O.R.C. § 2151.421, the 'reporting statute,' which provides immunity for initial reporters of suspicion of child abuse when the report is made in good faith."

Surdel contends that R.C. 2151.421(G)(1)(a) immunizes only the first person to report knowledge or suspicions of child abuse and does not extend to shield the appellees who treated, counseled, or otherwise examined the Surdel children after the initial report. He alternatively argues that immunity is unavailable if the appellees' participation was not in good faith or within objective standards of reasonableness. We conclude that because R.C. 2151.421(A)(1)(a) required the appellees to report, R.C. 2151.421(G)(1)(a) made them immune from liability for doing so. Accordingly, the trial court correctly held that the appellees were entitled to summary judgment and the judgment will be affirmed.

---

1. On January 31, 1997, LCCS was awarded a summary judgment and it was dismissed from the action. On October 17, 1997, Dr. Robert Soffer's motion for summary judgment was granted and he was dismissed from the action.

2. When the appellees moved for summary judgment, the immunity currently provided under R.C. 2151.421(G)(1)(a) was provided by R.C. 2151.421(G)(1). The subsequent amendment has no substantive effect on the issues in this case.

3. Appellees Gallagher and CCYS separately moved to dismiss Surdel's appeal, but those motions were withdrawn during oral argument.

■ We review the trial court's granting of summary judgment *de novo* in accordance with the standards set forth in Ohio Civ.R. 56(C). *N. Coast Cable L.P. v. Hanneman* (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875, 878–879. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164, 1171–1172. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. *Id.* See, also, *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. A summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. *State ex rel. The V. Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 473, 692 N.E.2d 198, 203–204; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

We begin our analysis of this case by reviewing the applicable statute. R.C. 2151.421(A)(1) establishes a mandatory duty to report known or suspected child abuse and states:

"(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred.

"(b) Division (A)(1)(a) of this section applies to any person who is an attorney; physician, including a hospital intern or resident; dentist; podiatrist; practitioner of a limited branch of medicine or surgery as specified in section 4731.15 of the Revised Code; registered nurse; licensed practical nurse; visiting nurse; other health care professional; licensed psychologist; licensed school psychologist; speech pathologist or audiologist; coroner; administrator or employee of a child day-care center; administrator or employee of a residential camp or child day camp; administrator or employee of a certified child care agency or other public or private children services agency; school teacher; school employee; school authority; person engaged in social work or the practice of professional counsel-

ing; or a person rendering spiritual treatment through prayer in accordance with the tenets of a well-recognized religion."

While persons subject to R.C. 2151.421(A)(1) are required to report their information, others not within the scope of that section are permitted to report their information pursuant to R.C. 2151.421(B), which provides:

"Anyone, who knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or other condition of a nature that reasonably indicates abuse or neglect of the child, may report or cause reports to be made of that knowledge or suspicion to the public children services agency or to a municipal or county peace officer."

To encourage persons to report their information to the proper authorities, R.C. 2151.421(G)(1)(a) confers immunity on them and provides:

"Except as provided in division (H)(3) of this section, anyone or any hospital, institution, school, health department, or agency participating in the making of reports under division (A) of this section, anyone or any hospital, institution, school, health department, or agency participating in good faith in the making of reports under division (B) of this section, and anyone participating in good faith in a judicial proceeding resulting from the reports, shall be immune from any civil or criminal liability for injury, death, or loss to person or property that otherwise might be incurred or imposed as a result of the making of the reports or the participation in the judicial proceeding."

R.C. 2151.421(H)(3) states:

"A person who knowingly makes or causes another person to make a false report under division (B) of this section that alleges that any person has committed an act or omission that resulted in a child being an abused child or a neglected child is guilty of a violation of section 2921.14 of the Revised Code."

In prior decisions, we have observed that the General Assembly's enactment of R.C. 2151.421(G) represented a policy decision that " 'the societal benefits arising from encouraging the reporting and prosecution of child abuse by granting immunity outweigh any individual harm which might arise from false reports.' " *Criswell v. Brentwood Hosp.* (1989), 49 Ohio App.3d 163, 165, 551 N.E.2d 1315, 1317, quoting *Bishop v. Ezzone* (June 26, 1981), Wood App. No. WD–80–63, unreported, 1981 WL 2955. See, also, *Cudlin v. Cudlin* (1990), 64 Ohio App.3d 249, 254, 580 N.E.2d 1170, 1172–1173. Courts that construed former R.C. 2151.421(G) said that statutory immunity applied even when the report was made in the absence of good faith. See, *e.g., id.* at 253, 580 N.E.2d at 1172; *Hartley v. Hartley* (1988), 42 Ohio App.3d 160, 537 N.E.2d 706. Subsequent amendments of R.C. 2151.421(G)(1)(a), however, specify that the immunity for permissive reports

made pursuant to R.C. 2151.421(B) and for participation in judicial proceedings resulting from the reports requires the participant's good faith. In recognition of the fact that those amendments did not similarly require the element of good faith for mandatory reports made pursuant to R.C. 2151.421(A), this court recently held that such mandatory reporters retain immunity under R.C. 2151.421(G)(1)(a) "regardless of whether the report was made in good faith." *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (June 7, 1999), Cuyahoga App. No. 74069, unreported, at 11.

In the instant case, it is undisputed that each of the appellees provided professional treatment and/or counseling services or otherwise examined the Surdel children following reports that they might have been sexually abused. We think it is inescapable that these appellees were within the category of persons and entities described in R.C. 2151.421(A)(1)(b) who were required to report their knowledge or suspicions of abuse pursuant to R.C. 2151.421(A)(1)(a). With regard to the counseling services provided by appellee Gallagher and her respective employers, the referral of the Surdel children by Lorain County authorities initially indicated possible abuse of the four-year-old child, but the children's subsequent statements and behavior during counseling sessions caused Gallagher to suspect at least that the six-year-old child may have experienced abuse as well. These appellees are plainly within the class of counselors who must report their knowledge or suspicions of abuse under R.C. 2151.421(A)(1)(a). It is likewise clear that the MetroHealth defendants were within the class of professionals who must report their knowledge or suspicions under R.C. 2151.421(A)(1)(a), which included information acquired by them as a result of physical examinations following the referral from Lorain County authorities. Because these appellees were obligated to report their knowledge or suspicions under R.C. 2151.421(A)(1)(a), it follows that they are immune from liability for doing so by operation of R.C. 2151.421(G)(1)(a).[4]

For his part, Surdel maintains that the immunity conferred by R.C. 2151.421(G)(1)(a) attaches only to the initial reporter of abuse and does not attach to subsequent reporters once an investigation has already begun. Relying on *Gersper v. Ashtabula Cty. Children Serv. Bd.* (1991), 59 Ohio St.3d 127, 570 N.E.2d 1120, Surdel argues that the appellees were mere "recipients" of reports and that only the initial reporter of suspected abuse is immune under R.C. 2151.421(G)(1)(a). We do not agree.

---

4. Immunity under R.C. 2151.421(G)(1)(a) would also attach to the extent that the appellees participated in good faith in judicial proceedings resulting from the reports. See discussion *infra*.

■ Nothing in the text of R.C. 2151.421(G)(1)(a) suggests that a distinction is drawn between the initial reporter and a subsequent reporter such that the former enjoys immunity but the latter does not. So far as we can see, *anyone* who participates in a mandatory report under R.C. 2151.421(A) or who participates in good faith in a permissive report under R.C. 2151.421(B) is immune under R.C. 2151.421(G)(1)(a). It is immaterial whether the information provided is considered the initial report or merely corroborative of an earlier report.

We also think Surdel's reliance on *Gersper. v. Ashtabula Cty. Children Serv. Bd., supra,* is misplaced. In that case, the Ashtabula County Children Services Board ("ACS") received a report from Geneva Hospital that the Gerspers' minor son may have been the victim of abuse. ACS and its caseworker investigated the report and subsequently sought custody of the child in the Ashtabula County Juvenile Court. The Gerspers eventually regained custody of their child and then filed an action against ACS and its caseworker alleging that the defendants were negligent and misrepresented the facts of the alleged child abuse. The defendants were granted immunity under former R.C. 2151.421(G), and the Supreme Court of Ohio affirmed. The court noted:

"The purpose of R.C. 2151.421(G) is clear. The General Assembly enacted division (G) to encourage those who know or suspect that a child has fallen victim to abuse or neglect to report the incident to the proper authorities and/or participate in the judicial proceedings to secure the child's safety without fear of being exposed to civil or criminal liability. It is obvious to us that appellees, *recipients* of a report of suspected abuse or neglect, do not fall within the protected class of those 'participating in the making of reports.' However, it is equally clear that appellees do, indeed, fall within that portion of the statute that grants immunity to those who have participated 'in a judicial proceeding resulting from the reports.' " (Emphasis *sic*; footnote omitted). *Id.,* 59 Ohio St.3d at 130, 570 N.E.2d at 1123–1124

The *Gersper* court accordingly held that former R.C. 2151.421(G) conferred immunity on those who, as a result of a report of a known or suspected incident· of child abuse and/or neglect, participated in a judicial proceeding. *Id.* at syllabus.

Surdel argues that, like the ACS and its caseworker in *Gersper,* the appellees herein are mere "recipients" of abuse reports and are therefore outside the class of reporters who are immune under R.C. 2151.421(G)(1)(a). Surdel's analogy is flawed because the appellees were not mere recipients of reports but rather provided professional counseling, treatment, and related services to the Surdel children and were obligated by R.C. 2151.421(A)(1)(a) to immediately report any knowledge or suspicions of abuse or neglect. While the defendants in *Gersper* were indeed the ultimate recipients of others' reports and consequently could not

claim immunity for reporting, we do not think that case can be understood to suggest that R.C. 2151.421(G)(1)(a) confers immunity only on the first report.

A recent decision by this court recognizes that immunity under R.C. 2151.421(G)(1)(a) is not limited to the initial reporter. In *Barney v. Univ. Hosps.* (Dec. 17, 1998), Cuyahoga App. No. 74188, unreported, 1998 WL 895273, a seven-year-old girl was taken by her mother to the emergency room at University Hospitals. The hospital diagnosed "alleged abuse" and reported the matter to the Ohio Department of Human Services ("ODHS") for an investigation. ODHS referred a child psychologist to work with the child, and the psychologist subsequently testified before the grand jury that indicted the child's father. After being acquitted of all charges, the father filed a damages action against the hospital and the psychologist. This court held that the hospital and the child psychologist to whom the child had been referred for counseling were immune under R.C. 2151.421(G)(1), notwithstanding that the psychologist was not the initial reporter of the suspected abuse but became involved only through a referral after the suspected abuse had been reported to the proper authorities.

We find no support under the statute or under the case decisions for Surdel's argument that only the first reporter is immunized by R.C. 2151.421(G)(1)(a). Beyond lacking support in law, Surdel's distinction is untenable in theory and unworkable in practice. The immunity conferred under R.C. 2151.421(G)(1)(a) serves the public policy of protecting children from physical and mental abuse by ensuring that persons who report their knowledge or suspicions will not be discouraged from doing so by the daunting prospect of civil or criminal liability. See *Walters v. The Enrichment Ctr. of Wishing Well, Inc., supra,* at 12. We think that it would be inconsistent with that policy to hold that the initial report is deserving of immunity but subsequent reports are not. And because subsequent reporters may have no information as to whether there is a prior report, the possible exposure to liability in the event there is an earlier report may discourage any reporting. That is hardly consistent with a policy that encourages reporting. Surdel's argument is contrary to law and logic.

Having concluded that these appellees were obligated to report under R.C. 2151.421(A)(1)(a) and were therefore within the class who can claim immunity under R.C. 2151.421(G)(1)(a), we next consider Surdel's alternative contentions that the appellees are not immune under R.C. 2151.421(G)(1)(a) if their participation was not in good faith or within objective standards of reasonableness. Neither argument is persuasive.

■ Our decision in *Walters v. The Enrichment Ctr. of Wishing Well, Inc., supra,* recognized that mandatory reporters retain immunity under R.C. 2151.421(G)(1)(a) "regardless of whether the report was made in good faith." *Id.,* at 11. So even if Surdel presented evidence to suggest that the appellees'

participation in the making of reports under R.C. 2151.421(A)(1)(a) was not in good faith, and we do not believe a lack of good faith was shown, these appellees are still covered by immunity under R.C. 2151.421(G)(1)(a).[5]

Surdel further argues that immunity will be provided under R.C. 2151.421(G)(1)(a) only if the reporter's suspicions are "reasonable." Surdel bases this argument on the text of R.C. 2151.421(A)(1)(a), which requires that any knowledge or suspicion be immediately reported when there is "any physical or mental wound, injury, disability, or *condition of a nature that reasonably indicates* abuse or neglect of the child." (Emphasis added.) R.C. 2151.421(A)(1). We think Surdel misconstrues the statute.

The statute describes the kinds of indicators on which the reporter may rely. The qualifying language clarifies that the duty to report does not require absolute proof but rather is triggered when the condition reasonably indicates abuse or neglect. The statute's focus is on the condition, not the reporter. And to the extent Surdel contends that R.C. 2151.421(G)(1)(a) does not confer immunity where the report results from the reporter's alleged unreasonable misdiagnosis, we rejected the same argument in *Criswell v. Brentwood Hosp., supra.*

After construing the evidence in the light most favorable to Surdel, we remain convinced that the appellees were immune from liability under R.C. 2151.421(G)(1)(a) and were accordingly entitled to summary judgment as a matter of law.[6] We therefore overrule Surdel's assignment of error and affirm the judgment.

*Judgment affirmed.*

MICHAEL J. CORRIGAN and KILBANE, JJ., concur.

---

**5.** We would reach the same result if we considered whether the appellees participated in good faith in judicial proceedings resulting from the reports. Surdel's evidence did not demonstrate that that participation was not in good faith.

**6.** Because we conclude that the appellees were correctly awarded summary judgment on the basis of R.C. 2151.421(G)(1)(a), it is unnecessary for us to address the alternate grounds they advanced in the court below.