CASBOHM et al., Appellants,

v.

METROHEALTH MEDICAL CENTER et al., Appellees.

[Cite as *Casbohm v. MetroHealth Med. Ctr.* (2000), 140 Ohio App.3d 58.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77022.

Decided Sept. 25, 2000.

*Brian F. McNamee* and *Judith A. Lehnowsky,* for appellants.

*Reminger & Reminger, James L. Malone* and *Thomas P. Mannion,* for appellees.

---

MICHAEL J. CORRIGAN, Judge.

The plaintiffs-appellants herein, Rick and Jennifer Casbohm,[1] appeal from the trial court's grant of summary judgment in favor of defendant-appellees Metro-Health Medical Center, Marsha Thompson, R.N. and JoAnn Jackson, M.D. based on immunity from civil lawsuit provided by R.C. 2151.421. Because we conclude that the trial court correctly found that all of the appellees were covered by the

---

1. Co-appellant Jennifer Casbohm is the daughter of appellant Rick Casbohm and is one of the minor children of Casbohm who was screened for symptoms of sexual abuse.

unqualified immunity granted under R.C. 2151.421(G)(1), we affirm the trial court's grant of summary judgment.

In November 1993, after a report of child abuse had been made by an unidentified individual, the Elyria Police Department referred Rick Casbohm's three minor children to appellee's MetroHealth Medical Center's Alpha Clinic for a physical examination in order to make a determination if one or more of the children had been sexually abused. At the time of the referral, Casbohm's two minor female children were ages eleven and five, respectively, and the minor male child was age nine.

Once at the Alpha Clinic, the three children were examined by appellee Thompson, who is a nurse practitioner. Thompson determined that all three of the children showed signs of being sexually molested. Specifically, Thompson stated that the eleven-year-old girl presented abnormalities of the external genitalia and perianal region and had a wart around the perianal region. The examination of the nine-year-old boy indicated the presence of rashes on the penis from an unknown source and abnormalities of the perianal region. Additionally, Thompson stated in her report that the five-year-old girl exhibited abnormal anatomical changes of the genitalia region and that she frequently masturbated with objects. Thompson concluded from her findings that there was a possibility that the children had been sexually abused.

As appellee was supervised in the course of her employment by co-appellee Dr. Jackson, it was necessary for Thompson to obtain the approval of Dr. Jackson prior to releasing her findings concerning possible sexual abuse. Dr. Jackson did in fact sign off on nurse Thompson's findings, and Thompson then proceeded to report her findings to the appropriate agencies responsible for investigating and dealing with situations involving potential sexual abuse. Specifically, nurse Thompson reported her findings to the Elyria Police Department during the course of an interview with detective Charles Gallion, which was transcribed and is part of the record in this case.

The appellants filed the instant lawsuit on January 25, 1997. The complaint alleged negligence and reckless conduct during the course of the investigation and in the subsequent reporting of the results of the investigation to various social agencies. In their brief in opposition to the appellees' motion for summary judgment, the appellants included affidavits from three physicians stating that nurse Thompson had profoundly misdiagnosed the three Casbohm children and had mistaken unremarkable and non-specific skin conditions as indicators of sexual abuse. Specifically, each expert stated that Thompson misdiagnosed a skin tag on Jennifer as a venereal wart and, in so doing, ignored the results of a test she had performed that consisted of scraping cells from the growth, and then negligently failed to obtain a biopsy to confirm her findings. Each expert also

opined that Dr. Jackson's conduct fell below the required standard of care as she merely signed off on nurse Thompson's findings without personally examining any of the children or any photographs documenting the purportedly abnormal conditions.

Dr. Joyce Adams stated in her report that she reviewed the findings of nurse Thompson and concluded that none of the three children "showed * * * evidence of sexual abuse" and that none of the findings "were even suspicious of abuse." Additionally, Dr. Adams stated that "Ms. Thompson's examination reports represent a gross over-interpretation of non-specific genital and anal findings as being suggestive of sexual abuse."

Attached to the appellants' brief in opposition to the motion for summary judgment at the trial court level was an affidavit from Jennifer Casbohm in which she absolutely and unequivocally denied that she was ever sexually abused by her father or that she ever gave any indication to anybody that her father had inappropriately touched her.

The appellees moved for summary judgment on October 21, 1997, on the basis that they enjoyed immunity from civil suit under R.C. 2151.421(A). The appellants filed a brief in opposition to the motion on July 7, 1998. The trial court eventually proceeded to grant the motion for summary judgment on August 27, 1999. The appellants filed the within appeal from the ruling of the trial court and present a singular assignment of error for this court's review. The appellants' assignment of error states:

"The trial court erred in granting defendants immunity under O.R.C. 2151.421, the reporting statute, as defendants were referral professionals and not initial reporters of suspicion of child abuse."

Civ.R. 56 provides that summary judgment may be granted only after the trial court determines that (1) no genuine issues as to any material fact remain to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.

Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio State Supreme Court modified and/or clarified the summary judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher,* "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Id.* at 296, 662 N.E.2d at 276. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id.* at 293, 662 N.E.2d at 273–274. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id.*

This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

█ R.C. 2151.421(A)(1)(a) states:

"No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the public children services agency or municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred."

█ R.C. 2151.421(A)(1)(b) specifically defines "person * * * acting in an official or professional capacity" to include a "physician, * * * registered nurse, [or] * * * other health care professional." Thus, R.C. 2151.421(A)(1)(a) imposes an affirmative legal duty upon physicians and nurses to report known or suspected child abuse. It does not merely permit such persons to report known or suspected abuse.

In *Walters v. The Enrichment Ctr. of Wishing Well, Inc.* (1999), 133 Ohio App.3d 66, 73, 726 N.E.2d 1058, 1063, this court discussed the public policy

rationale underlying the legislative grant of immunity found in R.C. 2151.421(G)(1)(a):

"In mandating that those persons listed in R.C. 2151.421(A) report known or suspected physical or mental abuse or neglect, it is clear that [the legislature believed that] the societal benefits of preventing child abuse outweigh the individual harm which might arise from the filing of an occasional false report. The grant of immunity found in R.C. 2151.421(G)(1) for those persons reporting under the mandatory provisions of R.C. 2151.421(A) similarly promotes the public policy goal of protecting children from physical and mental abuse by ensuring that those persons who are required by law to report such abuse are not deterred from this duty by the daunting prospect of expensive and time-consuming litigation."

■ This court has recently decided a case that is squarely on point with the case *sub judice*, and, in so doing, has made clear that R.C. 2151.421 does provide absolute immunity to medical professionals such as the appellees in the instant case who are asked to provide assistance to law enforcement agencies and social services providers.

In *Surdel v. MetroHealth Med. Ctr.* (1999), 135 Ohio App.3d 141, 733 N.E.2d 281, this court, coincidentally (or not), decided a case involving the identical defendants-appellees as in the present case. The facts of that case were essentially identical to those found in the instant case. Plaintiff-appellant John Surdel's three children were referred to the Alpha Clinic for an evaluation as to possible sexual abuse by Lorain County Children's Services. Nurse Thompson provided a report to a detective with the Lorain County Sheriff's Department indicating possible sexual abuse. As in the present case, Dr. Jackson failed to conduct an independent examination of the children, but instead relied on the findings of nurse Thompson. Surdel was subsequently charged criminally with multiple counts of felonious sexual penetration, but was ultimately acquitted on all counts. After being acquitted Surdel brought a civil action against the same defendants as in case *sub judice*. The court in *Surdel* found that nurse Thompson, Dr. Jackson, and MetroHealth all enjoyed statutory immunity, stating:

"We think it is inescapable that these appellees were within the category of persons and entities described in R.C. 2151.421(A)(1)(b) who were required to report their knowledge or suspicions of abuse pursuant to R.C. 2151.421(A)(1)(a). * * * It is likewise clear that the MetroHealth defendants were within the class of professionals who must report their knowledge or suspicions under R.C. 2151.421(A)(1)(a), which included information acquired by them as a result of physical examinations following the referral from Lorain County authorities. Because these appellees were obligated to report their knowledge or suspicions

under R.C. 2151.421(A)(1)(a), it follows that they are immune from liability for doing so by operation of R.C. 2151.421(G)(1)(a)." *Id.*, 135 Ohio App.3d at 147, 733 N.E.2d at 286.

The appellants maintain that the immunity conferred by R.C. 2151.421(G)(1)(a) attaches only to the initial reporter of abuse and does not attach to subsequent reporters once an investigation has already begun. Relying on *Gersper v. Ashtabula Cty. Children Services Bd.* (1991), 59 Ohio St.3d 127, 570 N.E.2d 1120, appellants argue that the appellees were mere "recipients" of reports and that only the initial reporter of suspected abuse is immune under R.C. 2151.421(G)(1)(a). This exact argument was analyzed and rejected by this court in *Surdel* as follows:

"Nothing in the text of R.C. 2151.421(G)(1)(a) suggests that a distinction is drawn between the initial reporter and a subsequent reporter such that the former enjoys immunity but the latter does not. So far as we can see, anyone who participates in a mandatory report under R.C. 2151.421(A) or who participates in good faith in a permissive report under R.C. 2151.421(B) is immune under R.C. 2151.421(G)(1)(a). It is immaterial whether the information provided is considered the initial report or merely corroborative of an earlier report." (Emphasis deleted.) *Id.*, 135 Ohio App.3d at 148, 733 N.E.2d at 286.

This court notes that the evidence presented by the appellant in his brief in opposition to the summary judgment motion was compelling as to the nonexistence of symptoms of sexual abuse in the three Casbohm children. Clearly, nurse Thompson's diagnosis of sexual abuse was, as stated by one reviewing physician, a grave departure from the applicable standard of care. Yet, the inescapable conclusion presented by the facts of this case leads us to the conclusion that each of the appellees enjoy immunity, which was not conditioned on good faith, for their respective roles in participating in making a report to a law enforcement agency of suspected child abuse. Because we find that the facts of the present case are indistinguishable from those already ruled upon by this court in *Surdel,* we are duty–bound to hold that the appellees are afforded absolute immunity for conduct arising out of their participation in the making of reports under R.C. 2151.421(A). Accordingly, this assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

Rocco, P.J., and Porter, J., concur.