JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, George Abram, Berry Grant, Alfonso Rollins, William Smith and Gilbert Crawford (appellants), appeal from the judgment of the trial court that granted summary judgment to defendants-appellees, Greater Cleveland Regional Transit Authority and Ronald Tober (appellees), in their action based on age and race discrimination. For the reasons set forth below, we affirm.
{¶ 2} Appellants originally filed their action against appellees in May 1999, in the Common Pleas Court of Cuyahoga County alleging discrimination based on their race and age in violation of Section 1981, Title 42, U.S. Code and R.C. 4112.02. Appellees removed the case to the United States District Court, Northern District of Ohio, Eastern Division where the court exercised its discretion not to accept jurisdiction over the appellants' state law claims and granted appellees' motion for summary judgment.[1]
{¶ 3} Thereafter, on August 7, 2001, the appellants re-filed their state law claims against appellees in the Common Pleas Court of Cuyahoga County alleging that the appellees intentionally discriminated against them on the basis of their race and age in violation of R.C. 4112.02. The appellants also contend that a facially neutral employment test used to screen applicants for managerial positions resulted in disparate impact on the African-American males in violation of R.C. 4112.02.
{¶ 4} On December 5, 2000 and January 12, 2001, appellees filed their respective motions for partial summary judgment on appellants' intentional race discrimination and disparate treatment claims. On July 23, 2001, the trial court granted the motions and found that appellants' claims of intentional race discrimination and disparate treatment were barred by the doctrine of res judicata. On April 24, 2001, appellees filed their unopposed supplemental motion for summary judgment on appellants' remaining claims of disparate impact and age discrimination which the trial court granted on July 23, 2001. The court ruled that appellants failed to establish a prima facie case of either disparate impact discrimination or intentional age discrimination.
{¶ 5} The evidence reveals that appellants are African-American males who are current and former employees of the Greater Cleveland Regional Transit Authority (RTA), a governmental entity charged with providing public transportation services in Cuyahoga County, Ohio.[2]
The alleged discrimination resulted from the implementation of the Total Quality Management program in 1991 by RTA's general manager, appellee Tober. The program was started in order to place greater emphasis on customer service. As a result of the analysis of the management structure in 1995, RTA reorganized its Operations Division on a site-based management model.
{¶ 6} Prior to the reorganization, the Operations Division was divided into four departments known as: Rail Transportation, Bus Transportation, Bus Equipment and Facilities Maintenance. The Operations Division was headed by the Assistant General Manager for Operations and each department was headed by a Director. The Bus Transportation Department was further divided into five districts known as: Paratransit, Triskett, Hayden, Brooklyn and Harvard. Each district was headed by a District Superintendent. Prior to reorganization, appellantCrawford held the position of Director of Facility Maintenance Department and appellants Grant and Smith held the positions of District Superintendents. Appellant Rollins held the position of Equipment Supervisor and was assigned to various districts.
{¶ 7} After the reorganization, the Operations Division was decentralized by eliminating the positions of Director of Bus Transportation, District Superintendent and Equipment Supervisor and making each of the former five districts report directly to the newly created position of Deputy General Manager of Operations. Each of the former Bus Transportation districts is headed by a District Director who is assisted by a Transportation Manager, Facilities Manager and Equipment Manager.
{¶ 8} RTA instituted a Workforce Accommodation Policy in order to assess the qualifications of displaced employees by the elimination of positions and to consider the employees for available positions matching the employees' abilities and skills. In the event there was no available position, the displaced employee would be assisted in preparing for another employment option.
{¶ 9} RTA announced the requirements for the position of District Director which included a bachelor's degree in business administration, transportation management or a related field. In recognition that many of the potential internal applicants lacked this degree, RTA waived the requirement for internal candidates only. RTA did not waive the performance and experience expectations and RTA required the applicants to participate in management assessment exercises to determine their individual level of competency for the position.
{¶ 10} A total of twenty-four internal applicants completed the screening test battery. Of the twenty-four male and female applicants, twelve were Caucasian and twelve were African-American. The thirteen applicants that scored in and above the 50th percentile were moved to the second phase in the selection process. In this phase, an outside human resources consulting firm, Personnel Decisions, Inc., of Chicago, Illinois, conducted a management assessment of each candidate. Appellants Grant, Rollins and Smith all scored below the 50th percentile and were not further considered for the position of District Director. Eventually three of the five District Director positions were filled by internal applicants, two of whom were African-American females.
{¶ 11} Subsequently, under the Workforce Accommodation Policy, appellants Grant and Smith were offered positions of Transportation Manager at the same salary and grade levels as their former positions. Appellant Rollins was offered the position of Maintenance Planner at the same salary but at a lower grade level (26 rather than 27.) Appellant Crawford was offered the position of Facilities Manager at the same salary but at a lower grade level (28 rather than 30.) Appellants maintain that they were discriminated against on the basis of their race and age due to management restructuring under the program in 1999.[3]
{¶ 12} Appellants now appeal and assign four errors for our review. We first review the appellants' third assignment of error which states as follows:
 {¶ 13} THE GRANT OF DEFENDANT-APPELLEES' [sic] MOTION FOR SUMMARY JUDGMENT WAS IN ERROR WHERE THE DOCTRINE OF RES JUDICATA OUGHT NOT TO APPLY TO PLAINTIFFS' STATE CLAIM OF DISCRIMINATION AGAINST DEFENDANTS AS FEDERAL JUDGE MATIA HAD EXPRESSLY DECLINED JURISDICTION OVER THEIR PENDANT STATE CLAIMS IN FEDERAL COURT.
{¶ 14} We note that this court reviews the lower court's grant of summary judgment de novo in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. North Coast Cable v. Hanneman (1994), 98 Ohio App.3d 434, 648 N.E.2d 875. In order for summary judgment to be properly rendered, it must be determined that:
 {¶ 15} (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 364 N.E.2d 267. See, also, State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,1996-Ohio-211, 663 N.E.2d 639. The burden of establishing that there is no genuine issue of material fact to be litigated is upon the party moving for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337,1993-Ohio-176, 617 N.E.2d 1123. If the moving party meets this burden, the non-moving party must then produce evidence pursuant to Civ.R. 56 setting forth specific facts which show that there is a genuine triable issue. State ex rel. Zimmerman v. Tompkins, supra, 75 Ohio St.3d at 449.
{¶ 16} The appellants contend that the doctrine of res judicata does not apply to bar their intentional race discrimination claims because the federal court declined jurisdiction over their pendent state claims and because there are cognizant differences in the statutory framework of R.C. 4112, Title VII and Section 1981, Title 42, U.S. Code.[4]
{¶ 17} R.C. 4112.02(A) provides:
 {¶ 18} It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
{¶ 19} Section 1981(a), Title 42, U.S. Code. provides:
 {¶ 20} Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
{¶ 21} In McGowan v. Cuyahoga Metropolitan Housing Auth. (Aug. 23, 2001), 8th Dist. No. 79137, we stated the following regarding the doctrine of res judicata:
 {¶ 22} * * * a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Fort Frye Teachers Assn., OEA/NEA v. State Employment Relations Bd. (1998), 81 Ohio St.3d 392, 692 N.E.2d 140, at syllabus, citing Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226. Additionally, the Grava court quoted the Restatement explaining that this rule `applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) to present evidence or groups of theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action.' Schul v. Ely (Feb. 2, 2001), Montgomery App. No. 18402, at 4.
 {¶ 23} Regarding the issue of res judicata with federal court, "to the extent to which a federal court judgment operates as res judicata in the federal court, it also operates as res judicata in Ohio State courts." Powell v. Doyle (Oct. 8, 1998), Cuyahoga App. No. 72900, at 8, citing Horne v. Woolever (1959), 170 Ohio St. 178, 163 N.E.2d 378. In order for a claim to be barred on the grounds of res judicata, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits. Id. citing, DK Properties Crystal Lake v. Mutual Life Ins. Co. of New York (C.A. 1997), 112 F.3d 257.
{¶ 24} In determining whether res judicata bars the appellants' state law claims we first review the identity of the parties in each action. The appellants do not deny that the instant state case involves the same parties as the federal case, to wit, appellants Abram, Grant, Rollins, Smith and Crawford, and appellees RTA and Tober.
{¶ 25} Second, the appellants do not deny that they brought the same causes of action in both the federal and state courts. In the federal court, the appellants claimed unlawful race discrimination in violation of Section 1981, Title 42, U.S. Code. In the instant action, the appellants claim racial discrimination in violation of R.C. 4112.02. The federal court concluded that the appellants claimed that the appellees violated Section 1981 in the following manner: (1) by paying appellants less than Caucasian employees; (2) by pressuring appellant Abrams to retire; (3) by discriminating against the appellants based on the RTA's facially neutral testing; and (4) by failing to hire the appellants based on their race.
{¶ 26} Regarding the third prong of the test, the federal court made a final judgment on the merits of the case, concluding that the appellants failed to set forth a prima facie case of discrimination based upon either disparate treatment, disparate impact or direct evidence. The federal court found that under the McDonnell Douglas/Burdine formula,[5]
Abrams failed to set forth a prima facie case of discrimination. Crawford and Rollins failed to show that RTA's nondiscriminatory reasons for its hiring decisions were pretexts for unlawful discrimination and all of the appellants failed to establish a prima facie case for disparate compensation. The federal court held that there existed no genuine issue of material fact and that appellees were entitled to judgment as a matter of law.
{¶ 27} It is clear that in the instant state action and the prior federal action, the same parties are litigating the same set of facts, issues and causes of action arising out of the same circumstances and occurrences.
{¶ 28} The appellants' assertion that res judicata should not apply as the federal court reviewed only the Section 1981, Title 42, U.S. Code claims while the state court reviewed the claims in violation of R.C. 4112 is without merit. See Duriron Co., Inc. v. Donald Hill, 2nd Dist. No. 8010. We assume the appellants' argument that cognizant differences exist in the statutory framework between R.C. 4112 and Section 1981, Title 42, U.S. Code means that a federal discrimination claim is somehow inherently different from a state discrimination claim. However, appellants fail to set forth their reasoning. We believe this distinction is immaterial. See Paige v. Youngstown Bd. of Edn. (Dec. 23, 1994), 7th Dist. No. 93C.A.212. Both the federal and state cases involve causes of action for intentional discrimination based on race and both require the application of the same legal standards and evidentiary burdens under the McDonnell Douglas/Burdine formula. Little Forest Med. Ctr. v. Ohio Civ. Rights Comm. (1991), 61 Ohio St.3d 607, 609-610,575 N.E.2d 1164; Plumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, 421 N.E.2d 128.
 {¶ 29} The McDonnell Douglas/Burdine formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ADEA, Laugesen v. Anaconda Co, 510 F.2d 307 (6th Cir. 1975), to claims of discrimination under Ohio state law, In re Brantley, 34 Ohio App.3d 320, 518 N.E.2d 602
(1987), and to claims under 42 U.S.C. § 1981, Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). Therefore, the District Court correctly "lumped together" Plaintiffs Title VII, ADEA, Section 1981 and Ohio state law theories of discrimination and applied the McDonnell Douglas/Burdine evidentiary framework in analyzing the factual and legal merits of Plaintiff's claims.
Mitchell v. Toledo Hosp. (1992), 964 F.2d 577, 582.
{¶ 30} Furthermore, we generally apply federal case law interpreting Title 42 U.S. Code to matters involving alleged violations of R.C. 4112. Little Forest Med. Ctr., supra, at 609-610; Plumbers 
Steamfitters Joint Apprenticeship Commt., supra, at 196.
{¶ 31} The federal court entered a final judgment on the merits of the disparate treatment and racial discrimination claims and, therefore, we find that the doctrine of res judicata bars appellants' state claims of disparate treatment and intentional race discrimination.
{¶ 32} Appellants' third assignment of error is not well-taken.
{¶ 33} Appellants' first assignment of error is as follows:
 {¶ 34} THE GRANT OF DEFENDANT-APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT WAS IN ERROR WHERE THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER OR NOT PLAINTIFF-APPELLANTS [sic] HAVE SUFFERED ILLEGAL RACIALLY BIASED DISPARATE TREATMENT IN PROMOTIONS AND HIRING AT APPELLEE'S [sic] BEHEST.
{¶ 35} As we find that appellants' disparate treatment and intentional race discrimination claims are barred by the doctrine of res judicata, appellants' first assignment of error is moot.
{¶ 36} We review together appellants' second and fourth interrelated assignments of error which are as follows:
 {¶ 37} THE GRANT OF DEFENDANT-APPELLEE'S [sic] MOTION FOR SUMMARY JUDGMENT WAS IN ERROR WHERE THERE EXIST GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER OR NOT PLAINTIFF-APPELLANT [sic] HAVE [sic], AS A PROTECTED GROUP, SUFFERED ILLEGAL, RACIALLY BIASED DISPARATE IMPACT UPON THEM AS A GROUP BROUGHT UPON THEM BY DEFENDANT-APPELLEE'S [sic] PROMOTION AND HIRING POLICIES.
 {¶ 38} THE GRANT OF DEFENDANT-APPELLEE'S [sic] SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT WAS IN ERROR WHERE A TOO SMALL A CLASS DOCTRINE IS ADOPTED BY THE TRIAL COURT IN ITS RULING TO VOID, AS EVIDENTIARY INSIGNIFICANT PLAINTIFFS' STATISTICALLY [sic] ASSERTIONS OF DISPARATE IMPACT OF DEFENDANTS' POLICIES IN HIRING, PAY AND PROMOTIONS ON THEM AS A PROTECTED CLASS OF INDIVIDUALS WHERE THE TRIAL COURT FINDS PLAINTIFFS' CLASS NUMBERS AS TOO SMALL TO BE STATISTICALLY RELEVANT IN A DISPARATE IMPACT ANALYSIS.
{¶ 39} The federal court concluded that the appellants did not claim a violation of Title VII. Therefore, while the federal court addressed the appellants' disparate treatment and intentional race discrimination claims, it did not review the appellants' separate claims herein of disparate impact.
{¶ 40} The two types of employment discrimination under Title VII are disparate treatment and disparate impact.
 {¶ 41} * * * Disparate treatment occurs when an employer treats some employees less favorably than others because of race, religion, sex, or the like. International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843 (1977). To base a claim on disparate treatment, the plaintiff must show discriminatory motive. Id. Such proof can be established by direct evidence or may be inferred based on a prima facie showing of discrimination. Id.; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253
n. 6, 101 S.Ct. 1089 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity. Internatl. Bd. of Teamsters, 431 U.S. at 335-36 n. 15. Unlike disparate treatment, disparate impact does not require a showing of discriminatory motive, since the claim is based on statistical evidence of systematic discrimination (i.e., a pattern or practice which results in discrimination). Id.; see also Griggs v. Duke Power Co., 401 U.S. 424, 430-32, 91 S.Ct. 849
(1971).
{¶ 42} The appellants did not oppose appellees' supplemental motion for summary judgment on the appellants' disparate impact claims brought pursuant to R.C. 4112. In this situation, the Ohio Supreme Court directs that:
 {¶ 43} Courts are to award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 269, 617 N.E.2d 1068, citing Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. However, "* * * we do not wish to discourage this procedure where a * * * [nonmoving party] fails to respond with evidence supporting the essentials of its claim. Summary judgment is appropriate when the nonmoving party does not `produce evidence on any issue for which that party bears the burden of production at trial.'" Leibreich, Id., citing Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.
State ex rel. Morley v. Lordi (1995), 72 Ohio St.3d 510, 651 N.E.2d 937.
{¶ 44} The appellants' complaint alleges that RTA's assessment tests for the selection of candidates for the position of District Director resulted in disparate impact on African-American males. In order to prevail, the appellants must establish that the RTA engaged in a specific practice that excluded from employment members of a protected class. Little Forest Med. Ctr., at 610; Watson v. Fort Worth Bank Trust (1988), 487 U.S. 977, 994, 108 S.Ct. 2777. This demonstration may be made through statistical evidence revealing a discrepancy between the composition of the workforce at issue and the composition of the pool of candidates for the specific employment in the relevant labor market. Little Forest Med. Ctr., at 610; Watson, at 997. Appellants failed to offer statistical evidence demonstrating such a discrepancy in response to the appellees' motion for summary judgment on appellants' disparate impact claims. Thus we review the record as it was presented to the trial court, including the evidence presented by the appellants in its brief in response to the appellees' motions for partial summary judgment on appellants' intentional race discrimination claims.
{¶ 45} The only statistical data presented consists of the written test scores of the twenty-four applicants.[6] It is the appellants' burden to show an adverse effect caused by the employment practice and to offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs * * * because of their membership in a protected group." Robinson v. City of North Olmsted (N.D.Ohio. 1997), 1997 U.S. Dist. LEXIS 17620, at 5, citing, Watson, supra, at 994.
{¶ 46} Appellants argue that the they have met the 80% or 4/5 rule set forth in 29 C.F.R. § 1607.4(D).
 {¶ 47} According to the rule, Federal enforcement agencies presume an adverse impact if the pass rate for a protected group is less than 80% of the pass rate for the most favored group. The Regulations also provide, however, that `greater differences in selection may not constitute adverse impact where the differences are based on smaller numbers and are not statistically significant * * *' 29 C.F.R. § 1607.4(D). [emphasis added].
Robinson, at 5.
{¶ 48} The court in Robinson found that statistical data based upon a pool of thirty-four people who took a building inspector examination was not sufficient alone to establish a prima facie case of disparate impact. Id. at 6. This court must decide whether the statistics relied on are sufficient on a case-by-case basis. Abbott v. Federal Forge, Inc. (C.A.6, 1990), 912 F.2d 867, 873. In the case sub judice, the pool consists of only twenty-four applicants, twelve African-Americans and twelve Caucasians. We find that the statistical data of the candidates' test scores is not sufficient alone to show that the tests caused the exclusion of the appellants for jobs because of their membership in a protected group. See Robinson, supra. Generally, a pool of twenty-four test takers is too small to be statistically significant. See Lander v. Montgomery County Bd. of Commrs. (S.D.Ohio 2001), 159 F. Supp.2d 1044,1061.
{¶ 49} We find that the appellants have not set forth a prima facie case of disparate impact. Assuming arguendo that appellants did set forth a prima facie case, RTA has demonstrated a business justification for its testing program which serves a legitimate employment goal. The appellants have failed to demonstrate otherwise.
 {¶ 50} Once the plaintiff has established a prima facie case of disparate impact, the employer has the burden of producing evidence of a "business justification" for its "neutral" hiring criteria. Wards Cove Packing Co., Inc. v. Atonio (1989), 490 U.S. 642, 659, 109 S.Ct. 2115. The burden of persuasion remains with the plaintiff to show that the challenged criteria fail to serve, in a significant way, the employer's legitimate employment goals. Id. at 659-660, 109 S.Ct. at 2126 * * *.
Little Forest Med. Ctr., at 610-611.
{¶ 51} The appellees aver that the screening tests were given for the following reasons: (1) to predict performance in the duties required of a District Director, (2) to measure the candidates' knowledge, skills and abilities as they related to the District Director position and (3) to reduce the cost of sending candidates through the second phase of the selection process.
{¶ 52} Based on the failure of the appellants to establish a prima facie case, we find that the appellees have made the required showing that no genuine issue of material fact exists for trial, and that appellees are entitled to judgment as a matter of law with the evidence being construed most strongly against them. Civ.R. 56(C). Therefore, appellants have the reciprocal burden of setting forth specific facts that a triable issue of fact does exist. See Jackson v. Alert Fire and Safety Equipment (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027. Appellants did not file a brief in opposition to the motion, thus the record must contain enough evidence to counter the evidence in the appellees' motion or appellants cannot prevail. See Head v. Brooks (Dec. 13, 2001), 8th Dist. No. 78411.
{¶ 53} Our review is limited to the trial court's record as presented by the parties. As the appellants made no attempt to respond to appellees' supplemental motion for summary judgment, the issues raised in appellees' motion were unopposed and appellants have waived those issues on appeal. Bradley v. Kijauskus (Mar. 26, 1998), 8th Dist. No. 72481. * * * It is a fundamental tenet that a party who does not respond to an adverse party's motion for summary judgment may not raise issues on appeal that should have been raised in response to the motion for summary judgment. Thompson v. Ghee (2000),139 Ohio App.3d 195, 199, 743 N.E.2d 459. See Maust v. Meyers Products, Inc. (1989), 64 Ohio App.3d 310, 313-314, 581 N.E.2d 589; Bradley, supra. Further, where the nonmoving party fails to respond to the motion, summary judgment is proper where reasonable minds can come to only one conclusion and that conclusion is adverse to the nonmoving party. See Morris v. Ohio Cas. Ins. Co. (1999),35 Ohio St.3d 45, 47.
{¶ 54} We find the appellants have not met their reciprocal burden of setting forth the existence of a genuine triable issue of fact and the trial court correctly granted summary judgment to appellees. The appellants' second and fourth assignments of error are overruled.
Judgment is affirmed.
It is ordered that appellees recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., AND JAMES J. SWEENEY, J., CONCUR.
[1] Abram v. Greater Cleveland Regional Transit Authority, Case No. 99CV1573. The United States Court of Appeals for the Sixth Circuit affirmed the grant of summary judgment in Abram v. Greater Cleveland Regional Transit Authority, Case No. 00-3871.
[2] Appellant Abram held the position of Director of RTA's Office of Equal Opportunity until his retirement in 1997. Appellant Smith is a former Transportation Manager in RTA's Paratransit District. Appellant Grant is currently employed as a Transportation Manager in RTA's Hayden District. Appellant Rollins is currently employed by the RTA as a Maintenance Planner and appellant Crawford is currently employed by the RTA as a Facilities Manager in RTA's Fleet Management Group.
[3] Appellants have not assigned error to the grant of summary judgment based on their age discrimination claims.
[4] Despite the appellants' argument that they set forth claims under Title VII, the federal court clearly states in its Memorandum of Opinion and Order Re: Granting Defendants' Motion for Summary Judgment that the appellants limited their claims to violations of Section 1981, Title 42, U.S. Code.
[5] McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,93 S.Ct. 1817; Texas Dep't. Of Community Affairs v. Burdine (1981), 450 U.S. 248,101 S.Ct. 1089.
[6] We note that the appellants' statistics do not specifically identify the race of each test taker.